Clement L. McEACHERN, Plaintiff,

v.

John W. MACY, Jr., Chairman, the United States Civil Service Commission, Frederick J. Lawton, Commission, the United States Civil Service Commission, Robert E. Hampton, Commissioner, the United States Civil Service Commission, Robert M. Ball, Commissioner of Social Security, Department of Health, Education, and Welfare, Defendants.

Civ. A. No. 4140.

United States District Court
W. D. South Carolina.

Heard June 8, 1964.

Decided July 8, 1964.

Charles C. Moore, Spartanburg, S. C., Clement L. McEachern, pro se, for plaintiff.

Robert O. DuPre, Asst. U. S. Atty., Greenville, S. C., for defendants.

HEMPHILL, District Judge.

Action for review of decision of the United States Civil Service Commission recommending removal of plaintiff from the position of Hearing Examiner of the Social Security Administration and prayer for reinstatement of plaintiff to the position. The original action commenced August 29, 1962, as an action against the United States of America, as defendant, was dismissed on grounds that the United States District Court had no jurisdiction to review the decision of the Civil Service Commission.[1] On appeal from that order the Fourth Circuit Court of Appeals held that the District Court had jurisdiction, approved venue in the district of plaintiff's residence and remanded the case for a review hearing, at the same time holding that the members of the Civil Service Commission, not the United States, were the proper parties, and allowing plaintiff to implead proper defendants.[2]

Clement L. McEachern is a resident of Greenville, South Carolina, having been sent to South Carolina as a Hearing Examiner of the Social Security Administration, which, on October 30, 1961, filed with the Civil Service Commission a general charge against plaintiff that he was financially irresponsible, specifying eight incidents of such failure, which allegedly brought discredit on the Agency and hence on the Department and the United States. Formal notice of the charges was served on plaintiff. After a full hearing attended by McEachern, an attorney in his own right, and his counsel, the Civil Service Commission, on July 16, 1962, rendered its opinion, making a determination that the charge of financial irresponsibility was sustained and that good cause had been established for the removal of the respondent from the position of Hearing Examiner, plaintiff was ordered removed from the Federal service. The present action asks for review and reversal of that decision and order, alleging that there was no substantial evidence that plaintiff brought discredit upon the Department, and generally claiming error of decision on the part of the Commission. Of the eight specific charges only four were sustained; four were dismissed.

Title 5 U.S.C. § 1010 provides:

"Subject to the civil-service and other laws to the extent not inconsistent with this chapter, there shall be appointed by and for each agency as many qualified and competent examiners as may be necessary for proceedings pursuant to sections 1006 and 1007 of this title, who shall be assigned to cases in rotation so far as practicable and shall perform no duties inconsistent with their duties and responsibilities as examiners. Examiners shall be removable by the agency in which they are employed only for good cause established and determined by the Civil Service Commission (hereinafter called the Commission) after opportunity for hearing and upon the record thereof. * * *"

After remand, the review was had at Greenville, S. C., June 8, 1964, at which hearing plaintiff appeared pro se,[3] he being a lawyer admitted to practice in the court of hearing.

---

1. McEachern v. United States, D.C., 212 F.Supp. 706.

2. McEachern v. United States, 4 Cir., 321 F.2d 31, in which the Court held: "We simply find jurisdiction; we intimate nothing as to the validity of the order." *Id.* at 32.

3. Counsel C. C. Moore advised by telegram that he could not be present and stated, "it is agreeable to proceed with this matter in my absence." A colloquy between the Court and McEachern was as follows:
THE COURT: * * * "Are you satisfied that you can present this matter in such a way that your rights will be fully protected?"
MR. McEACHERN: Yes Sir. Mr. Moore is in his campaign and the matter is vital to him. * * *"
THE COURT: "Do you feel your matter is prejudiced at all by his not being here?"
MR. McEACHERN: "No Sir."

Although the matter was not de novo full opportunity was given to plaintiff to conduct his presentation as he wished. He presented oral argument and filed a written brief.

The general charge against the respondent, stated in the first paragraph of the Statement of Charges and Specifications presented to the Civil Service Commission, reads as follows:

"Your failure to met your financial obligations and your financial irresponsibility is in direct violation of the policy of the Department as set forth in Personnel Guide 2 of Chapter C–2 of the Department's personnel manual. Your conduct has been such as to bring discredit on the Office of Hearings and Appeals, the Social Security Administration and the Department of Health, Education, and Welfare, and on the basis of the facts stated below warrants your removal from the position of hearing examiner with the Social Security Administration."

The Department's policy concerning the financial affairs of its employees is contained in Personnel Guide 2, in Chapter C–2 of its Personnel Manual, issued October 10, 1953. It recognizes that Federal employees have a special responsibility to meet their financial obligations promptly inasmuch as Federal salaries are not subject to attachment or garnishment. It states that it "becomes a mat-

ter of concern to the Department when complaints are received from * * * (an employee's) creditors, when it appears that financial difficulties are impairing his efficiency on the job, or when, by reason of his irresponsibility, the attitude of the general public toward the Department is adversely affected." [4]

At the hearing before this Court plaintiff was asked about the specific items. He admitted the indebtednesses, the delinquencies in the four accounts or charges sustained by the Civil Service Commission, but complained of the manner of proof and the conduct of the hearing.[5]

■ There is no basis for a contention that the Civil Service Commission did not have substantial evidence before it to sustain its findings. In the Summary and Conclusions of the Decision and Order of the Commission is found the following:

"CHARGES I, II, III AND IV are sustained. We also find that each of these charges lends support to the general charge that the respondent failed to meet his financial obligations and was financially irresponsible. The further question to be decided is whether these specific charges, taken together, establish good cause for the respondent's removal.

"The evidence under CHARGE I shows that two telephone bills, one large and one comparatively small,

4. The Personnel Guide reads in part as follows:
"*Principles Relating to Employee Indebtedness*
"1. An employee's irresponsibility or refusal to meet his just debts brings discredit upon the Department and may be detrimental to other members of the staff. Therefore, neglect of financial obligations may constitute grounds for disciplinary action, *including removal.*

* * * * *

"6. Contacts and correspondence relating to indebtedness or financial counseling are confidential. Materials regarding matters of indebtedness should not become part of

an employee's personal file. However, in those unusual cases where he refuses to cooperate in the settlement of a judgment or an acknowledged debt and an administrative action results, the record of such action becomes a part of the employee's official folder."

5. In the hearing the Court asked:
THE COURT: "Excuse my interrupting you but the main thing I am trying to determine is whether or not you complain of the truth of certain facts and in two instances you tell me you do not. Let's go back to the general charge of failure to meet your financial obligations. Is that correct?"
MR. McEACHERN: "Yes, your Honor."

totalling $73.72 have remained unpaid since 1958. The respondent admitted that no payments have been made on these accounts, one in Fountain Inn, South Carolina, and the other in Greenville, South Carolina.

"The proof of CHARGE II shows that the respondent borrowed $350.-00 from the Federal Employees Credit Union in August 1958 on his promise to repay the principal, with interest, in seven monthly installments beginning September 16, 1958. The first payment, $100.00, was not received until February 9, 1959. When no further payments were made the credit union wrote to the respondent and, finally, the account was referred to another institution for collection. In November 1959 an official of the Office of Hearings and Appeals in Washington felt compelled to call the respondent and urged him to pay the debt. Respondent says that he relied upon the amount reported by this official as the outstanding balance, and thereupon paid the sum of $293.44 by money order dated November 5, 1959. However, there remained, in fact, an unpaid balance of $31.42 after the November 5 payment. We do not consider this balance because the apparent legal effect of the endorsement on the money order was to terminate his legal obligation.

"The debt described in CHARGE III was incurred in April 1958 for the purchase of a set of automobile tires from a firm in Greenville, South Carolina, at a cost of $174.30, to be paid on a 30–60 day charge basis. The only payment made on this account was some time between April 29, 1961 and June 30, 1961, when $25.00 was paid, leaving a balance of $149.30 still due as of March 19, 1962, the date of the hearing in this case.

"CHARGE IV was based on respondent's default on a real estate improvement loan of $2759.52 received in January 1960 from a bank in Laurens, South Carolina. At the most, three or four payments were made, according to the respondent's testimony, between January and October 1960, one of them in February 1960. Respondent confessed judgment in the bank's suit for $2529.54 filed on April 18, 1961; he excuses his failure to pay anything on the debt after October 1960 by implying that the debt somehow merged with a claim for attorney's fees which the respondent resisted as unreasonable and excessive.

"Certainly, the record on these four charges shows that the respondent failed to meet his financial obligations in these instances. This conclusion may be put another way: In each case he breached his express or implied agreement to make timely payments in accordance with the conditions of his contract. His defaults persisted after complaints were made to the Agency by the creditors or their representatives, and, in most instances, after repeated efforts by the creditors to obtain payment.

\*　　\*　　\*　　\*　　\*　　\*

"Had the respondent given the Agency or the Commission evidence of a good faith effort to meet his debt problem by making partial payments from time to time, a different picture might have been shown; it has not been demonstrated that, considering the respondent's salary, an effort to discharge his obligations in this manner would have been fruitless. But evidence of such an effort is lacking with respect to debts which were still outstanding after three, and nearly four, years had gone by. Instead we find some evidence of a litigious attitude on the part of the respondent, as well as a reluctance to concede that the Agency has a proper concern when an employee's neglect of his lawful debts takes the time and attention of Agency officers and employees and tends to discredit the Department and its personnel in the eyes of the

public. We may remark also that in our review of the record in this case we have seen no persuasive evidence which would lead us to believe that the respondent's attitude respecting his financial affairs and his Agency's interest in them has changed significantly."

Plaintiff's principal objection to the conduct of the Civil Service Commission alleges a denial to him of Due Process because the creditors themselves did not appear and testify and "be subjected to cross examination and also confront the accused."[6] He also states, "the plaintiff states that the Department's Personnel Guide 2 of Chapter C–2 the Department's Personnel Manual is a good rule and an employee should pay his just and honest debts".[7] His complaint is that certain letters from creditors to the Agency were introduced or considered; that, instead, the creditors should have been presented for cross examination purposes. The subpoena powers available were not used by plaintiff to bring creditors before the Agency.[8]

> The Courts have frequently held that "The power of appointment to public office carries with it the right of removal. United States ex rel. Taylor v. Taft, 24 App.D.C. 95; Longfellow v. Gudger, 57 App.D.C. 50, 16 F.2d 653; United States ex rel. Crow v. Mitchell, 67 App.D.C. 61, 89 F.2d 805; Caswell v. Morgenthau, 69 App.D.C. 15, 98 F.2d 296. And the reason for the rule is that 'interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief'. Decatur v. Paulding, 14 Pet. 497, 515, 10 L.Ed. 559, 609. Unless an examination of

the record showed (a) that the action of the Civil Service Commission in removing plaintiff from office was clearly a violation of some provision of law or (b) that the Civil Service Commission failed to observe and carry out the procedure for removal as provided by law, this court would have no jurisdiction. Levine v. Farley, 1939, 70 App.D.C. 381, 107 F.2d 186, certiorari denied 1940, 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519."[9]

In Carter v. Forrestal, supra, the United States Court of Appeals for the District of Columbia Circuit upheld the statutory authority of the head of a Department of Defense to prescribe regulations, catalogued the authority as constitutional and stated:

> "We believe that dismissal for wilful refusal or negligent failure to pay lawful debts without sufficient excuse or reason is clearly for a cause that will promote the efficiency of the service. Such a regulation is manifestly within the statutory authorization."

In the instant case the Social Security Administration had the right to prescribe regulations, the duty to carry them out, as was done by preference of charges. The Civil Service Commission had the responsibility to determine from the evidence the correctness of the charges. This it did from substantial evidence before it.

The requirements of Title 5 U.S.C. §§ 1004, 1005, 1006, set forth statutory provisions and procedures applicable to cases of this nature. In Federal Trade Commission v. Cement Institute,[10] it was decided:

> "Furthermore, administrative agencies like the Federal Trade Commis-

6. Plaintiff's brief. (It is to be noted that this is not a criminal action, but is administrative in procedure and substance. See Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364.)

7. *Ibid.*

8. Pages 23–24 hearing at Greenville. Provision is made for plaintiff himself to subpoena any witness he desires. 5 CFR 34.109.

9. McEachern v. United States, D.C., 212 F.Supp. 706.

10. 333 U.S. 683, 705, 706, 68 S.Ct. 793, 805, 806, 92 L.Ed. 1010.

sion have never been restricted by the rigid rules of evidence. Interstate Commerce Commission v. Baird, 194 U.S. 25, 44, 24 S.Ct. 563, 568, 569, 48 L.Ed. 860. And of course rules which bar certain types of evidence in criminal or quasi-criminal cases are not controlling in proceedings like this, where the effect of the Commission's order is not to punish or to fasten liability on respondents for past conduct but to ban specific practices for the future in accordance with the general mandate of Congress."

In that case evidence dating back more than 25 years was introduced. In this case plaintiff does not question the truth of the contents of the letters, admits the debts they describe. Clearly this was contemplated in the Act:

"Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof. Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money or benefits or applications for initial licenses any agency may, where the interest of any party will not be prejudiced

thereby, adopt procedures for the submission of all or part of the evidence in written form." [11]

Plaintiff cites Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 and Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377, as authority to show he was not properly accorded "the right of confrontation and to cross examine his accusers". Those cases are of no avail to plaintiff in this instance because the procedure is set out by the Administrative Procedure Act, which was passed by the Congress and signed by the President. In both cases cited by plaintiff there was no procedure having the sanction of law.[12]

■ There is no dipute that the fact of the plaintiff's employment was well known to the creditors involved, as evidenced by their continuing complaints to the Social Security Administration. It is apparent that some part of the general public knew, therefore, that the Social Security Administration employed and continued to retain a person in a responsible position who was neglectful of his personal financial obligations. The plaintiff would require independent evidence that his continuing employment caused the Social Security Administration to be held in lower esteem. In order to satisfy such requirement, testimony of a countless number of witnesses would be necessary to prove the previous reputation of the agency in the same method to show how that reputation was impaired. The Courts have never required specific proof of such facts. The Commission drew a justifiable inference from the established facts just as ordinary men would conclude without specific proof that known law violations by policemen undermine public confidence in the Police Department. Dismissed Government employees have presented somewhat the same argument in other cases. In

---

11. 5 U.S.C. § 1006(c).

12. "We decide only that in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petition-

er of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." Greene v. McElroy, 360 U.S. 474, 508, 79 S.Ct. 1400, 1419.

**522**

Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962), the Court held that the conduct of the employee was such as to bring the Department into disrepute. This was done without requiring independent evidence on how the employee's actions, which were distributing handbills critical of his superiors, did discredit the Post Office Department.

The decision and order of the Civil Service Commission is affirmed.

The proceedings at Greenville, South Carolina, as transcribed by the official Court Reporter, are included as part of the official proceedings in this matter.

And it is so ordered.