Van V. **ROBINSON**, Plaintiff-Appellant,

v.

Winton M. **BLOUNT**, as Postmaster General of the United States, et al., Defendants-Appellees.

No. 26528.

United States Court of Appeals, Ninth Circuit.

Jan. 3, 1973.

Thomas Schneider, Legal Aid Society of Alameda County, Oakland, Cal., for plaintiff-appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Morton Hollander, William Kanter, Alan S. Rosenthal, Attys., Washington, D.C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendants-appellees.

Before JERTBERG and WALLACE, Circuit Judges, and SOLOMON *, District Judge.

JERTBERG, Circuit Judge:

Appellant, a former career Civil Service Postal Clerk, instituted an action in the District Court for review of the administrative decision made to separate him from the Postal Service, and for reinstatement with back pay and benefits. Both parties moved for summary judgment. The District Court denied appellant's motion and granted defendants' motion, and entered judgment in favor of the defendants. Appellant appeals in forma pauperis.

The record reveals that appellant received an appointment as a clerk with the Oakland, California Post Office on February 3, 1962. On March 9, 1967, the Oakland postmaster gave Robinson "advance notice" of proposed removal from his job. The notice stated that "[t]he proposed action is considered to be for such cause as will promote the efficiency of the service." The notice charged a failure by Robinson to meet his financial obligations. Two such obligations were specified. One was a judgment entered against him on July 12, 1966, in the amount of $300.52, on which he had agreed to pay $25.00 a month commencing on July 22, 1966, and a similar amount on the 22nd day of each succeeding month; that no payments had been made since July 12, 1966, leaving a

* Honorable Gus J. Solomon, United States Senior District Judge for the District of Oregon, sitting by designation.

**841**

current balance of $251.52. The other was on a debt incurred by Robinson on October 21, 1966, in the amount of $310.80, payable starting November 15, 1966, in twenty-four installments of $12.95 each month, on which no payments had been made. The notice further stated that certain parts of Robinson's "past record will be considered in determining the extent of action to be taken should the current charge be sustained." Specifically the notice referred to an official reprimand of September 29, 1965 "for failure to pay a just debt"; a suspension of September 6, 1966 "for failure to meet your financial obligations"; and a suspension in November of 1966 for "repeated tardiness."

Robinson replied in writing March 17, 1967, and orally on March 20, 1967, at which time he advised the Postmaster of his intention to file a Wage Earners' Plan under Chapter XIII of the Bankruptcy Act (11 U.S.C. §§ 1001–1086).

On April 18, 1967, the Postmaster issued his decision ordering Robinson's removal from his job effective May 19, 1967. The decision explained that the charge listed in the notice of March 9, 1967, had been sustained and that "the sustained charge, plus all of the elements of your past record, as listed in the proposed adverse action notice, have formed the basis for my decision."

Robinson appealed that initial decision to the San Francisco Regional Office of the Post Office Department. The Regional Office held a full hearing at which Robinson submitted papers showing that he had filed a Wage Earners' Plan under the Bankruptcy Law on March 29, 1967, and that his plan had been approved on May 1, 1967.

After the hearing, and on October 4, 1967, the Regional Office affirmed the job removal, holding that it was "justified and in the best interest of the Postal Service". Having remained on duty pending that appellate decision by the Regional Office, Robinson was removed from his job on October 13, 1967.

Thereafter, Robinson filed a further appeal to the Civil Service Commission's San Francisco Regional Office. On November 21, 1967, the Commission's Regional Office conducted another *de novo* hearing. The Regional Office issued its decision on May 22, 1968, sustaining Robinson's removal. The Regional Office rejected Robinson's contention that his filing of the Wage Earner Plan rendered the Post Office removal decision unreasonable, stating:

"The filing under the Wage Earners Plan in March, 1967, approved in May 1967, with first payment apparently being made under the plan in July 1967—indicates that payment in a prompt and timely manner has not been a part of appellant's actions in his past relationship with creditors. While this filing was a positive effort to satisfy creditors it came too late. It was not unreasonable for the Post Office Department to determine that appellant's efforts subsequent to the advance notice did not justify a lesser penalty."

Robinson appealed the decision of the Regional Office to the Board of Appeals and Review of the Civil Service Commission. In its decision of November 22, 1968, the Board reviewed the entire record and concluded that the removal should be sustained. The Board specifically found that "the action of the agency * * * based on the sustained charge of failure to meet his financial obligations and a prior record of three disciplinary actions was for such cause as would promote the efficiency of the service", and while acknowledging Robinson's filing of the Wage Earners' Plan subsequent to the notice of proposed removal, the Board found that the "agency's decision to effect appellant's removal on the sustained charge and the prior record which included two disciplinary actions involving financial obligations is not arbitrary, capricious, or unduly harsh."

On review of the administrative decision the District Court sustained Robin-

842

son's removal from the Postal Service, concluding that "his termination was neither arbitrary nor capricious so as to be violative of due process. This decision is based on this Court's conclusion that the administrative agency record supports the Post Office and the Civil Service Commission's findings that Robinson was not meeting his financial obligations in a proper and timely manner, and that his discharge, therefore, was for just cause and to promote the efficiency of the Service."

The issues presented on this appeal, as stated in appellant's brief are:

I. Did defendants act unlawfully in removing plaintiff from the postal service for "failure to meet financial obligations" after he had filed and was in the process of consummating a wage earners' plan under Chapter XIII of the Bankruptcy Act, since a wage earners' plan is a Congressionally mandated way of meeting financial obligations?

II. Did the defendants unlawfully interpret the regulation under which they acted in removing plaintiff from the postal service by determining that the "proper and timely manner" which the regulation specifies for payment of financial obligations is a shorter time and a different manner than that provided by Chapter XIII of the Bankruptcy Act?

III. Is the regulation under which defendants acted in removing plaintiff from the postal service unconstitutionally vague if it is not construed so as to exclude plaintiff's situation?

The law appears to be well settled in this Circuit that the scope of review on this kind of case is narrow. See Seebach v. Cullen, 338 F.2d 663, 694 (9th Cir. 1964), cert. den. 380 U.S. 972, 85 S. Ct. 1331, 14 L.Ed.2d 268 (1965); and Benson v. United States, 421 F.2d 515,

517 (9th Cir.), cert. den. 398 U.S. 943, 90 S.Ct. 1861, 26 L.Ed.2d 279 (1970).

In *Seebach,* this Court stated at page 664 of 338 F.2d:

"Judicial review of dismissal from federal employment, a matter of executive agency discretion, is limited to a determination of whether the required procedural steps have been substantially complied with. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774 (1900); and see Hargett v. Summerfield, 100 U.S.App.D.C. 85, 243 F.2d 29 (1957), and cases there cited. Thus, the scope of our review is confined to questions of law, and a motion for summary judgment was an appropriate means of reaching and deciding the issues in the District Court."

This principle was reaffirmed in *Benson, supra,* 421 F.2d at page 517.

In the instant case appellant made no claim in the District Court, and makes none in this Court, of any procedural error in the record. Hence, we proceed to consider the questions of law raised on this appeal by appellant.

The authority under which appellees acted in terminating appellant's employment in the Postal Service is embodied in 5 U.S.C.A. § 7501(a) and the regulations of the Civil Service Commission and the Postal Service.

5 U.S.C.A. § 7501(a) in pertinent part provides:

"An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service."

The regulations of the Post Office Department, 39 C.F.R. § 742.735-29(d), in pertinent part provide:

"An employee shall pay each just financial obligation in a proper and timely manner, * * * and * * * in a manner which the department determines does not, under the circumstances, reflect adversely on the Government as his employer."

And:

"(7) Failure to pay just financial obligations will be regarded as cause for disciplinary action."

The regulations of the Civil Service Commission, 5 C.F.R. § 735.207, restate the above quoted language of the Post Office Department except in respect to "(7)".

■ Appellant broadly contends that appellees were without authority to discharge appellant from the Postal Service because he had filed, and was participating in, a Wage Earners' Plan set up under Chapter XIII of the Bankruptcy Act, 11 U.S.C. §§ 1001–1086. To do so, he argues, would be contrary to the intent of Congress that a wage earner be allowed to meet his financial obligations by participating in a Wage Earners' Plan. In this connection appellant states:

"Under these circumstances, it is a blatant violation of the Congressional purpose for the government itself to stop the functioning of the plan by cutting off plaintiff's wages by firing him."

Appellant calls to our attention no provision in Chapter XIII which prohibits the Government from terminating the employment of an employee for failure to meet his financial obligations because he has filed or is participating in a Wage Earners' Plan under Chapter XIII. Our examination of Chapter XIII reveals no such provision. No convincing authority is cited by appellant to support such contention.

We find no merit in appellant's contention.

Likewise we find no merit in appellant's contention that appellees unlawfully misinterpreted or misconstrued the regulations under which appellant's employment by the Government was terminated.

The regulation requires an employee to pay each just financial obligation "in a proper and timely manner", which is defined to mean "in a manner which the Department determines does not, under the circumstances, reflect adversely on the Government as his employer." 39 C.F.R. § 742.735–29(d). He argues that payment of financial obligations through a Wage Earners' Plan is, by law, a "proper and timely manner" because the Wage Earners' Plan is established under Federal law, and in view of the desirable purpose of the plan, "it is a matter of law that such payment does not 'reflect adversely on the Government as his employer'."

He further argues that unless the regulations are construed in a manner urged by appellant, a conflict exists between Chapter XIII and the controlling statute, 5 U.S.C. § 7501(a), and that such conflict can only be avoided if the phrase "efficiency of the service" in said section is interpreted to prohibit the termination of employment of an employee who is participating in a Wage Earners' Plan under Chapter XIII.

No authority, other than Chapter XIII, is cited in support of such contention.

In our view a Wage Earners' Plan under Chapter XIII does not supplant the specific requirements of the Postal Service regulations, and any general policy that may be read into Chapter XIII is not sufficient to override specific regulations.

The vice in appellant's argument is his erroneous assumption that a Wage Earners' Plan under Chapter XIII prohibits the Government from terminating the employment of an employee for failure to meet his financial obligations because he has filed, or is participating in, a Wage Earners' Plan under Chapter XIII.

Finally, appellant asserts that certain words or phrases in the regulations are unconstitutionally vague and thereby deprive appellant of due process. They

are "proper and timely manner," and "reflect adversely on the Government as his employer." He argues that the latitude given the appellees under the regulations allow them to fire employees for illegal reasons under the guise of legal ones. Appellant's brief states:

"A more precise regulation could not be simply a cover for racism, as Robinson believed it was. The writer of this brief has consistently advised Robinson that there is no evidence in this record to support the charge that he was fired because he is Black."

■ We need not reach the constitutional question because we are satisfied that the regulations, as applied in this case, were not unconstitutionally vague.

The charges against appellant, as set forth in the "advance notice" of proposed removal dated March 9, 1967 from the Oakland Postmaster to Robinson, were clear and specific, and informed appellant of the cause of his proposed removal. Such fact is confirmed by appellant's reply, dated March 17, 1967 to the Postmaster, wherein it is stated:

"This is in reply to your letter addressed to me dated March 9, 1966 (sic), in which you informed me that because of complaints made and my failure to pay my financial obligations that it is proposed that I be removed from the employment in the postal service or that other disciplinary action may be taken against me. I respectfully request that I be forgiven for my failure to meet by obligations. I realize that I have been reprimanded for failure to meet the obligations on September 29, 1965, and was suspended on September 6, 1966, for the same reason and that I did not act intelligently in not seeking help in arranging my affairs so that my debts could be paid in an orderly manner and within my ability to pay."

The judgment appealed from is affirmed.