Donella DENNIS, Appellant,

v.

Winton M. BLOUNT, Postmaster General, United States Postal Service, United States Postal Service, Appellees.

No. 72–1639.

United States Court of Appeals, Ninth Circuit.

May 31, 1974.

Paul M. Posner (argued), Beverly Hills, Cal., for appellant.

Alan Peryam (argued), Matthew A. Schumacher, Asst. U. S. Attys., Los Angeles, Cal., for appellees.

Before DUNIWAY, KILKENNY and GOODWIN, Circuit Judges.

OPINION

DUNIWAY, Circuit Judge:

Appellant Ms. Dennis, a postal employee, was discharged. She exhausted her administrative remedies and then brought this action to set aside the discharge. On motion for summary judgment, based upon the administrative record, the district court entered judgment against her. She appeals, and we affirm.

The pertinent statute is 5 U.S.C. § 7512, made applicable to appellant by Executive Order 10,988 of January 17, 1962 and Executive Order 11,491 of October 29, 1969. Under the statute, Ms. Dennis could be discharged "only for such cause as will promote the efficiency of the service." The same language appears in the Lloyd-LaFollette Act, 5 U. S.C. § 7501.

We set out in the margin pertinent parts of the letter which was sent to Ms. Dennis on June 5, 1970, initiating proceedings culminating in her discharge.[1] Ms. Dennis did not respond, and on July 6, 1970, a notice was sent to her, reading in part as follows:

> After careful consideration of the charge it has been decided that Charge No. 1, which is supported by substantial evidence, is sustained and warrants your removal. Accordingly, you will be removed from the Postal Service effective July 29, 1970.
>
> The elements of your past record, as set forth in detail in the letter of proposed adverse action, were also considered in deciding upon the penalty to be imposed.

Ms. Dennis appealed, but she at no time contested the accuracy of the charges

---

[1] "This is advance notice to you of at least 35 days from the receipt of this letter that it is proposed to remove you from the Postal Service, suspend without pay for such period as may be administratively decided, or to take such other disciplinary action as may be deemed warranted for the following reason(s):

CHARGE NO 1
You are charged with failure to pay your just debts as contracted as evidenced by the following debt complaint received in this office from your creditor.

| DATE | CREDITOR | CURRENT BALANCE |
|------|----------|-----------------|
| March 24, 1970 | Cal State Finance Co. | $176.26 |

In addition to the above, the following elements of your past record will be considered in determining the extent of disciplinary action should the current charge be sustained:
On February 8, 1969 you were issued a letter of warning for failure to pay your just debts as contracted.

You were issued a letter of warning on July 3, 1969 for being absent without leave.

A notice of proposed adverse action was issued to you June 6, 1969 for failure to pay your just debts as contracted. As a result of that charge, you were suspended from duty without pay on July 31, 1969. On November 20, 1969, you were issued a notice of proposed adverse action for fraudulently obtaining $2,659 in Aid to Families with Dependent Children's Fund by not reporting your employment with the Post Office Department to the Department of Social Services. As a result of that charge you were suspended from duty without pay from February 25, 1970, through February 27, 1970. On January 16, 1970 you were issued a notice of proposed adverse action for failure to pay your just debts as contracted. As a result of that charge, you were suspended from duty without pay from March 12, 1970 to March 14, 1970."

and past record as set out in the June 5, 1970, letter, or the validity of the debt.

■ The specific charge that triggered disciplinary action is based upon Postal Regulations, particularly 39 C.F.R. § 742.735–29(d).[2] There are similar provisions in the Civil Service Regulations, 5 C.F.R. § 735.207. The same regulation was before us in Robinson v. Blount, 9 Cir., 1973, 472 F.2d 839. That case answers one of Dennis' arguments —that she paid the debt while her administrative appeal was pending and therefore should not have been discharged. A similar argument was made in *Robinson*, based on Robinson's having belatedly provided for payment of his debt through a wage earner's plan under the Bankruptcy Act, and rejected.

■ The other arguments made by Ms. Dennis were not made or considered in *Robinson*. Her principal contention is that she cannot be discharged for failure to pay a private debt not reduced to judgment. She buttresses this argument by urging that the Post Office has no legitimate interest in whether she has failed to pay a single debt. Much of her argument is wrapped in notions of constitutional rights. No such rights were invaded here. Ms. Dennis was not discharged for exercising a constitutional right. Thus the cases on which she relies are not applicable here. In Pickering v. Board of Education, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, a teacher was fired for exercising his First Amendment rights of free speech by writing a letter to the papers criticizing the school board. In Gardner v. Broderick, 1968, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, a policeman was fired for refusing to waive his Fifth Amendment privilege against self-incrimination. In Spevack v. Klein, 1967, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574, a lawyer was disbarred for asserting the same privilege. Wieman v. Updegraff, 1952, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, is a loyalty oath case, involving the due process clause of the Fourteenth Amendment. Ms. Dennis does not, and could not, claim a constitutional right not to pay a just debt. Moreover, as the opinions in Arnett v. Kennedy, 1974, —— U.S. ——, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), demonstrate, even the exercise of a constitutional right can, in a particular setting, be cause for discharge.

■ Thus the only question is one of statutory construction: do the grounds for Ms. Dennis' discharge fall within the language of § 7512? That language was held sufficiently definite in Arnett v. Kennedy, *supra*. We hold that they do. This case does not involve a discharge for failure to pay a single debt. That was merely the catalyst that initiated the discharge. The basis for the discharge was the "charge" plus Ms. Dennis' past record. We have no doubt that, taken together, these grounds fall within § 7512. The Post Office can take into account the failure of its employees to pay their just debts. Their wages are not subject to garnishment and it would reflect upon the Service if

---

2. (d) *Indebtedness.* (1) An employee shall pay each just financial obligation in a proper and timely manner. . . . For the purpose of this section, a "just financial obligation" means one acknowledged by the employee or reduced to final judgment by a court, and "in a proper and timely manner" means in a manner which the Department determines does not, under the circumstances, reflect adversely on the Government as his employer. In the event of dispute between an employee and an alleged creditor, this section does not require the Department to determine the validity or amount of the disputed debt or to institute disciplinary proceedings.

(2) Employees shall not borrow money or contract debts which they have no reasonable prospect of being able to pay. They are expected to conduct themselves honorably, deal honestly with others, and meet their obligations promptly so that there will be no cause for embarrassment or criticism. The fact that the wages or salary of Government employees cannot be trusted or garnished by legal process shall not be used by employees to avoid the payment of their just debts.

 * * * * *

(7) Failure to pay just financial obligations will be regarded as cause for disciplinary action.

its employees could use their employment as a means of defeating their creditors. See Carter v. Forrestal, 1949, 85 U.S.App.D.C. 53, 175 F.2d 364, 366; McEachern v. Macy, 4 Cir., 1965, 341 F.2d 895, aff'g W.D.S.C., 1964, 233 F.Supp. 516; Jenkins v. Macy, 8 Cir. 1966, 357 F.2d 62, 70, aff'g E.D.Mo., 1964, 237 F.Supp. 60; Non-Resident Taxpayers Ass'n v. Municipality of Philadelphia, 3 Cir., 1973, 478 F.2d 457, 460. *Cf.* Norton v. Macy, 1969, 135 U.S.App.D.C. 214, 417 F.2d 1161, 1168.

We decline to rule on the tendered question—discharge for not paying a single debt not reduced to judgment, because this is not such a case. White v. Bloomberg, D.Md., 1972, 345 F.Supp. 133, 148, Ms. Dennis' bellweather case, does not fit our factual mold. It is to be distinguished on at least two important grounds: there (1) the charges related to the non-payment of a single obligation, and (2) the employee disputed the bona fides of the debt.

Ms. Dennis also argues that she has been deprived of due process and equal protection under the principles articulated in Richardson v. Belcher, 1971, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231, and Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884.

The main thrust of her constitutional argument is that while she is a federal employee in California and subject to the postal regulation with reference to prompt payment of debts, her fellow Californians employed by the state or private sector could not be discharged for failure to pay a debt and, under Cal.Civ.Pro.Code § 690.6 (West, Supp. 1974), her wages would be exempt from any type of garnishment except for debts incurred " . . . for the common necessaries of life." She urges that all of her wages were required in providing the necessaries for her family of seven children, and that the Cal-State Finance indebtedness was not for "the common necessaries of life." Therefore, under California law she would be shielded from the impact of discharge and garnishment. She employs this rationale to support her claim of an equal protection violation.

 At the outset, it seems clear that there is a valid distinction between federal and non-federal employees. Of more than ordinary significance is the fact that federal employees are not subject to garnishment, while one-half the wages of the other Californians are normally subject to such proceedings. *See* Cal.Civ.Pr.Code § 690.6 (West, Supp. 1974). No doubt, the government could have made its employees' wages subject to a state garnishment. Instead, however, it chose to protect its employees from the harsh impact of garnishment and its Postal Department promulgated the far less stringent regulation requiring employees to pay their just financial obligations. The challenged regulations clearly recognize this federal employee advantage. In our view, the mere fact that federal employees, such as appellant, may work under rules and regulations which differ from those governing persons engaged in state or private employment does not, in itself, point to an equal protection-due process defect within the meaning of the Fifth Amendment.

If the national government were required to tailor its regulations governing its employees to those of each of the fifty states at the risk of having its regulations held invalid if it did not do so, administration of the federal civil service could be reduced to a shambles. If any of the provisions of the Constitution are applicable here, they are the necessary and proper clause and the supremacy clause of the Constitution, not the equal protection-due process clauses.

Likewise, appellant's due process argument on the basis of Sniadach v. Family Finance Corp., 1969, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, is to no avail. *Sniadach* is a garnishment case in which the court held that an employee's wages were not subject to garnishment without first providing an opportunity to be heard. Even if the law in *Sniadach* could be applied to our

 

facts, the procedures outlined in the regulations, and followed by the Post Office, were proper. The disciplinary provision of the regulations does not come into play until the debt has either been reduced to judgment or the employee acknowledges the debt. The Post Office takes no action if the employee disputes indebtedness. Even if there is a judgment or if the employee acknowledges the debt, he is not summarily dismissed, as this record demonstrates, but may work out some method of payment.

Other cases cited by appellant have received our analysis. While, at first glance, a few of them seem to be helpful, a closer study reveals their inapplicability.

■■ A few tag ends. Even conceding, which we do not, that title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. is relevant, the appellant is in no position to claim its protection. A person may not maintain a suit for redress in the federal courts under the Civil Rights Act until she has first exhausted all the available avenues of potential administrative relief. Love v. Pullman Co., 1972, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679.[3] The applicability of this Act was not presented to either the Post Office Department or the United States Civil Service Commission.

Neither can we consider the Truth in Lending Act, 15 U.S.C. § 1601 et seq. Even though the Act might have some relevance to these facts, a point which we do not decide, a violation of the Act is not charged in appellant's complaint.

■ The district court correctly confined itself to considering the administrative record. The standard of review is narrow.[4]

Since the record presents no genuine issue of fact, the granting of the summary judgment was proper.

Affirmed.

KILKENNY, Circuit Judge, concurs in the result.

---

3. *Love* presented a different factual background, but announced the rule just stated.

4. This court has, to some extent, broadened its concept of the scope of review in such a case as this.

In Seebach v. Cullen, 9 Cir. 1964, 338 F.2d 663; Brancadora v. FNMA, 9 Cir., 1965, 344 F.2d 933; Taylor v. United States Civil Service Commission, 9 Cir., 1967, 374 F.2d 466; Mancilla v. United States, 9 Cir., 1967, 382 F.2d 269; and Benson v. United States, 9 Cir., 1970, 421 F.2d 515, we said that the only issue was whether the agencies had substantially complied with statutory and administrative procedures. In Frommhagen v. Klein, 9 Cir., 1972, 456 F.2d 1391, we also considered whether the agency's action was arbitrary or capricious. In Burke v. Carpenter, 9 Cir., 1967, 387 F.2d 259; and Toohey v. Nitze, 9 Cir., 1970, 429 F.2d 1332, we also considered whether the action was an abuse of discretion and whether factual determinations were supported by substantial evidence. However, even under the broadest scope, as set forth in *Toohey*, the scope of review is narrow. As we emphasized in *Toohey* at 1334, "Dismissal from federal employment is largely a matter of executive agency discretion. . . . The scope of judicial review is narrow."