FRANK RUSIGNUOLO, PLAINTIFF-APPELLANT-CROSS-RESPONDENT, v. CARMEN A. ORECHIO, COMMISSIONER OF PUBLIC SAFETY OF THE TOWN OF NUTLEY, AND FRANCIS T. BUEL, CHIEF OF POLICE OF THE TOWN OF NUTLEY, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.

Argued April 5, 1976—Decided June 8, 1976.

Mr. *Avrom J. Gold* argued the cause for plaintiff-appellant-cross-respondent (*Messrs. Mandelbaum, Mandelbaum & Gold,* attorneys).

Mr. *James M. Piro* argued the cause for defendants-respondents-cross-appellants.

Mr. *Francis X. Hayes* argued the cause for *amicus curiae* The New Jersey State League of Municipalities and New Jersey Institute for Municipal Attorneys.

The opinion of the Court was delivered by

SULLIVAN, J. This is a companion case to *Jansco v. Waldron,* 70 *N. J.* 320 (1976), also decided this day, and involves the same basic question decided therein, whether the governing body of a municipality, in creating and establishing a police department and force under the authority of *N. J. S. A.* 40:47-1, now 40A:14-118, must itself and by ordinance, adopt rules and regulations for the government of the department and force and for the discipline of its members, or whether this statutory power may be subdelegated to a subordinate body or official.

The Police Department of the Town of Nutley exists and is regulated and controlled by Ordinance #357 adopted on August 7, 1928 pursuant to *N. J. S. A.* 40:47-1, now *N. J. S. A.* 40A:14-118. The ordinance, *inter alia,* vests

in the Director of Public Safety full executive, judicial and administrative control of the department including the power to enforce the rules and regulations provided by the ordinance as well as the power to promulgate such administrative rules as, in his judgment, may from time to time be proper for the efficient management of the department. Under the ordinance the Chief of Police is given the power to promulgate orders to the police force not inconsistent with any of the orders or rules established in the ordinance or any administrative orders made by the Director pursuant to the enabling ordinance.

Article II of the ordinance contains general rules applicable to the members of the police force, one of which, Section 32, provides:

* * * Although certain hours are allotted for the performance of regular tours of duty all members of the Department are considered to be at all times subject to call for duty and must act promptly at any time that their services are required.

Article IV of the ordinance, which deals with Control, Discipline and Removal from Office, lists in Section 3 the disciplinary charges to be heard before the Director of Public Safety. Included therein is the following:

(7) Neglect in paying just debts, contracted while a member of the force.

On February 6, 1968 the governing body of the Town of Nutley adopted by resolution a set of Rules and Regulations governing the Police Department of Nutley which had been compiled by the Chief of Police under the supervision of the Director of Public Safety. These rules include Rule of General Conduct No. 3:2.1:

Duty Requirement. Police officers shall be always subject to duty even when periodically relieved from regularly scheduled duty.

and Disciplinary Rule No. 6:16:

Department members shall neither neglect nor refuse to pay their just debts.

Plaintiff is a Nutley police officer. On June 15, 1973 the defendant Police Chief of the Town of Nutley issued an order requiring all police officers to "have a telephone at their residency in order that they are accessible to the call of the Department, and in cases of dire emergency." The order referred to Rule 3:2.1, *supra*. Plaintiff, who did not have a telephone in his home, refused to comply with the order although notified by the Director of Public Safety that unless he did. so charges would be preferred against him.

On July 19, 1973 a departmental complaint was filed charging plaintiff with violating the order of June 15, 1973, as well as disobeying direct orders from the Director of Public Safety and the Deputy Police Chief that plaintiff secure a telephone. The complaint also charged plaintiff with a violation of Nutley Police Department Rules and Regulations, Chapter VI, Rule 6.16, Payment of Just Debts, in that plaintiff owed a debt of $199.41 to Janette Shop. A notice fixing a time and place for hearing accompanied the complaint.

Upon being served with the charges and notice of hearing plaintiff filed the instant suit seeking basically to have the charges against him dismissed on the ground that the June 15, 1973 order and Rule 6.16 had no legal standing, not having been provided for by ordinance. The trial court ruled that the Legislature, in granting the power to the governing body of a municipality under *N. J. S. A.* 40:47–1, to establish, maintain, regulate and control a police department and force and to prescribe and establish rules and regulations for the government and discipline thereof, "expressly proclaimed" that such power be exercised through the instrumentality of an ordinance and not by resolution. Accordingly, it was held that the June 15, 1973 order and Disciplinary Rule 6.16 of the 1967 Rules and Regulations

of the Nutley Police Department, not having been promulgated by ordinance, were invalid and unenforceable.

On appeal, the Appellate Division upheld the principle that rules and regulations for the government and discipline of a police department had to be adopted and promulgated by ordinance. However, the Appellate Division ruled that the daily administration of a police department can be delegated to its department head and that such a practice enhances departmental efficiency and is in the public interest.

Turning to the particular order and rule challenged, the Appellate Division noted that the Nutley ordinance establishing a police department did provide by rule that all policemen were at all times subject to call for duty and had to act promptly at any time their services were required. It found that the June 15, 1973 order requiring a home telephone implemented the ordinance rule and was lawful since the subject matter was one committed to the expert judgment of the Director of Public Safety and the Chief of Police. Accordingly, the Appellate Division reversed the dismissal of the charges based upon the violation of the June 15, 1973 order.

The Appellate Division, however, held that the charge against plaintiff of failure to pay his just debts, an alleged violation of Rule 6.16 of the 1967 Rules and Regulations of the Nutley Police Department, must be dismissed as the particular rule was not promulgated in the 1928 Ordinance or otherwise included in the rules and regulations then adopted for the government of the police department. Since it was part of the Rules and Regulations adopted in 1968 by resolution of the governing body, the Appellate Division held that the method of adoption, by resolution, did not satisfy the statutory requirement of adoption by ordinance. The Appellate Division also concluded that the rule did not relate to the day-to-day activities of police officers or involve the routine and regular administration of the department. It therefore upheld the trial court's decision that the rule

was invalid and could not serve as the basis of a disciplinary charge against plaintiff. This Court granted plaintiff's petition and defendants' cross-petition for certification. 68 *N. J.* 481 (1975).

In *Jansco v. Waldron, supra,* we held that *N. J. S. A.* 40:47-1, now 40A:14-118, empowering a municipality by ordinance to establish a police department and to adopt and promulgate rules and regulations for the government and discipline thereof, permitted the municipality by ordinance to subdelegate such rule-making power to subordinate authority. To the extent applicable, we incorporate the *Jansco* holding into this opinion and sustain the authority of the governing body of the Town of Nutley, by ordinance, to subdelegate to the Director of Public Safety the power to promulgate administrative rules not inconsistent with any of the orders or rules established in the ordinance and to subdelegate to the Chief of Police the power to promulgate orders to the police force not inconsistent with orders or rules established in the ordinance or by the Director of Public Safety.

We therefore affirm that part of the Appellate Division ruling which upheld the legality of the June 15, 1973 order of the Chief of Police requiring a home telephone. The ordinance establishing the Nutley Police Department contains a general rule that all members of the department are considered to be subject to call for duty at all times and must act promptly at any time that their services are required.[1] The ordinance also empowers the Chief of Police to promulgate orders to the police force not inconsistent with any of the orders or rules established in the ordinance. The June 15, 1973 order of the Chief of Police implements the general rule contained in the or-

---

[1] Rule 3:2.1 of the Rules and Regulations of the Nutley Police Department, referred to in the initial order issued by the Chief of Police, is substantially identical in this respect to the ordinance rule.

dinance and is a valid exercise of the administrative power vested in him.

We disagree with the factual basis of the Appellate Division's holding that Rule 6 :16 of the 1967 Rules and Regulations of the Nutley Police Department requiring payment of just debts was invalid because adopted by resolution rather than ordinance. The ordinance establishing the Nutley Police Department, in Article IV, dealing with Control, Discipline and Removal from Office, in fact specifically lists in Section 3 (7), "Neglect in paying just debts, contracted while a member of the force," as one of the disciplinary charges to be heard before the Director of Public Safety. Rule 6 :16, therefore, has its genesis in an ordinance provision and is not subject to attack on the ground that it was not "promulgated by ordinance."

██ As we noted in *Jansco, supra,* however, disciplinary rules are always subject to considerations of due process and reasonableness. Failure to pay just debts has been upheld as a basis for police disciplinary action. *Cleu v. San Francisco Police Com'rs,* 3 *Cal. App.* 174, 84 *P.* 672 (1906); *Nodes v. City of Hastings,* 284 *Minn.* 552, 170 *N. W.* 2d 92 (Sup. Ct. 1969); *Sayles v. Bd. of Fire and Police Com'rs,* 25 Ill. App. 2d 262, 166 *N. E.* 2d 469 (App. Ct. 1960). See *Moorestown Tp. v. Armstrong,* 89 *N. J. Super.* 560 (App. Div. 1965), certif. den. 47 *N. J.* 80 (1966). *Cf. McEachern v. Macy,* 233 *F. Supp.* 516 (W. D. S. C. 1964), aff'd 341 *F.* 2d 895 (4 Cir. 1965).

We agree with the principle reflected by these decisions. Inexcusable failure to pay ordinary debts places the police officer in a position of diminished respect by the community which could detract from his effectiveness as a law enforcement officer. Moreover, merchant creditors of a neighborhood police officer, understandably, might be reluctant to press for collection of the debt against the officer.

We therefore sustain the facial validity of the just debt rule which should be read in the light of this opinion. The legality of the rule, as applied, would depend on the facts

of the particular case. Certainly, it would be improper to use the disciplinary power to resolve a bona fide dispute as to payment, quality of merchandise and the like. We are not, of course, passing upon the issue of plaintiff's guilt or innocence. This is for the Director of Public Safety to decide based on the proofs to be adduced at the disciplinary hearing.

The judgment of the Appellate Division is affirmed insofar as it sustains the disciplinary charges against plaintiff growing out of the June 15, 1973 order. That part of the Appellate Division judgment which holds that Rule 6.16 was promulgated contrary to statutory authorization is reversed and the disciplinary charge against plaintiff based on Rule 6.16 is hereby reinstated.

PASHMAN, J. (concurring in part and dissenting in part). I am in substantial accord with the majority holding in this case and the companion case of *Jansco v. Waldron,* 70 *N. J.* 320 (1976), concerning the power of a municipality to sub-delegate the rule-making authority which it derives from *N. J. S. A.* 40A:14–118 (formerly *N. J. S. A.* 40:47–1). I also concur in the majority's decision to uphold the validity of the rule requiring all police officers to have a telephone at their homes. This rule certainly bears a real and substantial re'ationship to the performance of a policeman's responsibilities. Disciplinary proceedings brought against plaintiff for a violation of this rule may therefore be resumed. However, I must dissent from that part of the majority opinion which reinstates the disciplinary charge against plaintiff based on Disciplinary Rule No. 6:16 which provides:

> Department members shall neither neglect nor refuse to pay their just debts.

I would affirm the judgment of the Appellate Division and dismiss this charge, but for reasons other than those stated by the court below.[1]

---

[1]My rationale for dismissing this charge exists irrespective of whether the "just debt" rule is imposed by way of "order," "regu-

While I recognize that municipalities may exercise considerable control over the conduct of their civil servants including members of the police department, such rules and regulations are still subject to considerations of due process and reasonableness. *Jansco v. Waldron, supra,* 70 *N. J.* at 320; *see generally,* 16 *McQuillan, Municipal Corporations* (3 ed. 1972), § 45.09 at 597. This means that disciplinary rules may not be arbitrary or capricious and must bear a real and substantial relationship to a legitimate purpose of the rule-making body. *Roselle v. Wright,* 21 *N. J.* 400, 409-410 (1956). Furthermore, such rules may not be so vague and indefinite that persons of ordinary intelligence cannot discern their meaning or understand what is prohibited by the rule. *Bence v. Breier,* 357 *F. Supp.* 231, 233 (E. D. Wis. 1973), aff'd 501 *F.* 2d 1185, 1190 (7 Cir. 1974), *cert.* den. 419 *U. S.* 1121, 95 *S. Ct.* 804, 42 *L. Ed.* 2d 821 (1975); *cf. Baggett v. Bullitt,* 377 *U. S.* 360, 367, 84 *S. Ct.* 1316, 12 *L. Ed.* 2d 377, 382 (1964); *Connally v. General Construction Co.,* 269 *U. S.* 385, 391, 46 *S. Ct.* 126, 70 *L. Ed.* 322, 328 (1926); *Weiner v. Borough of Strafford,* 15 *N. J.* 295, 299 (1954); *Hoboken v. Bauer,* 137 *N. J. L.* 327, 329 (Sup. Ct. 1948).

With respect to the rule involved in the instant case — compelling police officers to pay their "just debts" — authority exists for the proposition that where a peace officer is protected by statute from discharge or suspension except for cause (*see e. g., N. J. S. A.* 40A:14-147), he cannot be removed or discharged from office for the mere failure to pay personal debts which have no relation to his employment. Annotation, "Failure of public officer or employee to pay creditors on claims not related to his office or position as ground or justification for his removal or suspension," 127 *A. L. R.* 495 (1940); 70 *Am. Jur.* 2d, *Sheriffs, Police and*

lation," "rule" or "ordinance." For this reason, and for the reasons stated by this Court in *Jansco v. Waldron, supra* and here, *ante* at 333, 336, I reject the reasoning of the Appellate Division.

*Constables,* § 12 at 140. It has been held that this principle applies even where the municipality or its police department has promulgated a rule requiring the prompt payment of debts. *Chicago v. Gillen,* 124 *Ill. App.* 210 (App. Ct. 1906), aff'd 222 *Ill.* 112, 78 *N. E.* 13 (Sup. Ct. 1906) ; Annotation, *supra,* 127 *A. L. R.* at 495.

This principle is grounded on several legitimate policy considerations. Frequently, the refusal to promptly pay a personal debt will have no relationship to the performance of an officer's duties or to a legitimate municipal purpose and may therefore contravene principles of due process. *Nodes v. City of Hastings,* 284 *Minn.* 552, 170 *N. W.* 2d 92, 95 (Sup. Ct. 1969) (Rogosheske, J., concurring). In addition, indiscriminate application of such a rule could unreasonably interfere with an employee's personal affairs. The conceivable use of this rule to harass members of the police force is raised by the unfortunate prospect that local merchants will employ the police department as a surrogate collection agency. *See, e. g., Anderson v. Civil Service Comm'rs,* 227 *Iowa* 1164, 290 *N. W.* 493 (Sup. Ct. 1940). Finally, the rule itself is vulnerable to challenge as being vague and indefinite. *Bence v. Breier, supra,* 501 *F.* 2d 1190. For instance, the meaning of the term "just debt" is unclear and raises questions as to its practical applicability. Does the rule apply to situations where payment is withheld either as part of a good faith dispute or in conjunction with a consumer complaint? Does it apply to cases where an officer simply and innocently forgets to pay a bill or where he temporarily is unable to do so due to an illness in his family? *See, e. g., Anderson v. Civil Service Comm'rs, supra,* 290 *N. W.* 493.

On the other hand, the nonpayment of debts may of course, in some instances, have quite a direct effect on an officer's performance of his duties. For example, persistent financial irresponsibility may impose such personal stress on an officer that his ability to perform his duties is unduly compromised.

*Nodes v. City of Hastings, supra,* 170 *N. W.* 2d at 93. In addition, the habitual indebtedness of even one member of a police detachment may cause severe and debilitating embarrassment to the department as a whole. *Cf., Jenkins v. Macy,* 357 *F.* 2d 62, 70 (8 Cir. 1966); *McEachern v. Macy,* 233 *F. Supp.* 516 (W. D. S. D. 1964), aff'd 341 *F.* 2d 895 (4 Cir. 1965). Under some circumstances, an officer might even use his authority to obtain improper extensions of credit. Even absent such clear examples of misconduct, the habitual and inexcusable failure of a police officer to satisfy his financial obligations may reflect adversely upon his character as a public employee and as a law enforcement officer. As the majority correctly observes, *inexcusable* failure to pay ordinary debts could diminish the respect to which an officer is otherwise entitled from the community, and would compromise his effectiveness as a peace officer. Ante at 337. In all of these situations, the rule requiring policemen to pay their "just debts" is clearly related to the legitimate goal of protecting the integrity and effectiveness of the municipal police force. Therefore, I would not follow those authorities which would invalidate such a municipal or departmental rule on its face.

Nevertheless, to prevent the abuses which I potentially foresee and to save the rule from the constitutional due process and vagueness objections noted above, I would require that disciplinary action under Department Rule 6:16 be contingent upon a factual determination that the officer's failure to pay the debt or debts in question will, in some real sense, adversely affect his performance as a police officer to the detriment of both the department and the public at large. Without such a finding, there is no rational basis for this rule.

In the instant case, such a conclusion is unsupported by the record before us. The charge against plaintiff is singularly unelaborated. In essence, it states only that plaintiff, as of July 3, 1973, owed a debt of $199.41 to Janette

Shop, a clothing and apparel store in Nutley. The charge was filed on July 19, 1973, only 16 days after payment allegedly became due. There is no allegation that plaintiff neglected to pay any other debt, that he used his authority to secure an improper extension of credit, that he has, in any way, damaged the operational effectiveness of the police department or that his ability to serve as a police officer has been impaired. In these respects, the instant case is clearly distinguishable from the cases cited by the majority. Ante at 337. In each of those cases, there was considerable evidence which established that the officer's failure to satisfy his financial commitments had affected his ability to perform his job. Moreover, in each of those cases, the officer's failure to pay his debts was both habitual and inexcusable.

The factual setting of *Nodes v. City of Hastings*, for example, stands in stark contrast to the charges preferred against plaintiff here. The record in that case plainly disclosed that Officer Nodes had a long history of financial difficulties, had repeatedly borrowed money to consolidate debts, and had repeatedly assumed obligations beyond his financial means to repay. This led the city civil service commission to conclude that he could "no longer have the respect due a policeman." 170 *N. W.* 2d at 93. In light of this evidence, the Supreme Court of Minnesota stated:

> On the basis of the record before us, we are of the view that the commissioners acted in good faith for the welfare of the service and that their decision was not unreasonable or oppressive. It is unnecessary to restate the numerous complaints found in the record which relate to plaintiff's credit standing. It is sufficient to say that the record establishes that *his reputation for not paying his bills was so notorious as to destroy his usefulness as a member of the police force.* [284 Minn. 552, 170 *N. W.* 2d at 94; emphasis supplied]

In *Moorestown Tp. v. Armstrong*, 89 *N. J. Super.* 560 (App. Div. 1965), certif. den. 47 *N. J.* 80 (1966), a case which concerned the issuance of checks without sufficient funds, Justice (then Judge) Sullivan correctly noted that this offense contributed to the "lack of good judgment, im-

maturity of character and emotional instability" demonstrated by the officer. 89 *N. J. Super.* at 566. In that case, though, unlike in the instant case, plaintiff was charged with a substantial number of other offenses, including failure to report for duty, chronic tardiness, driving a vehicle without a valid registration, failure to report an accident to the proper authorities, physically abusing his wife and threatening to misuse a firearm.

A similar result was reached in *Sayles v. Bd. of Fire and Police Commr's.,* 25 *Ill. App.* 2d 262, 166 *N. E.* 2d 469 (App. Ct. 1960), where the officer involved, not only refused to pay his debts, but was also charged with assigning his wages in violation of a department rule and with failing to pay his taxes. *See also, McEachern v. Macy, supra,* 233 *F.* Supp. 516, involving eight specific instances of financial irresponsibility.

As I have already noted, under appropriate circumstances, Department Rule 6:16 serves a salutary and legitimate function. However, as applied by the majority, it would permit the police department to discharge an officer for mere failure to pay a single personal debt without any proof that such failure constituted a form of misconduct, impaired the officer's ability to perform his functions or, in any way, affected the interests of the public. I would not allow such an application. *See, Nodes v. City of Hastings, supra,* 170 *N. W.* 2d at 95 (Rogosheske, J., concurring). Instead, I would sustain the rule by requiring that the department find that an officer's failure to pay his debts must affect the performance of his duties or jeopardize the well-being of the department in general.[2] In this way, the rule would be al-

---

[2]This technique of performing "judicial surgery" in order to preserve the constitutional integrity of a statute or an ordinance has received judicial sanction by this Court in *Brunetti v. New Milford,* 68 *N. J.* 576, 601 (1975) ; *Collingswood v. Ringgold,* 66 *N. J.* 350, 357 (1975) ; *State v. DeSantis,* 65 *N. J.* 462, 472–73 (1974) ; *State v. Profaci,* 56 *N. J.* 346, 349–50 (1971) ; *State v. Zito,* 54 *N. J.* 206, 218 (1969).

lowed to meet a legitimate municipal purpose without unnecessarily encroaching upon the personal affairs of department employees. *Cf. Akridge v. Barres,* 65 *N. J.* 266 (1974) (dissenting opinions).

For the foregoing reasons, I would dismiss the charge against plaintiff relating to the nonpayment of a debt. Such dismissal would be without prejudice so that if circumstances should subsequently warrant (as, for example, if plaintiff's nonpayment of debts becomes chronic and debilitating) the department may reinstitute proceedings.

*For modification*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD—6.

*Concurring and dissenting*—Justice PASHMAN—1.