Johnnie L. CARR et al., Plaintiffs,

v.

UNITED STATES of America et al.,
Defendants.

No. C–71–1348.

United States District Court,
N. D. California.

Feb. 15, 1972.

James L. Browning, Jr., U. S. Atty.,
Richard F. Locke, Asst. U. S. Atty., San
Francisco, Cal., for defendants.

E. A. Dawley, Lawrence R. Mullen,
Wendell T. Fitzgerald, Michael L.
Woods, San Francisco, Cal., for plain-
tiffs.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZIRPOLI, District Judge.

This is an action challenging a final
decision of the Board of Appeals and
Review of the Civil Service Commission
upholding plaintiff's discharge as a clas-
sified government employee "for such

cause as will promote the efficiency of the service." 5 U.S.C. § 7501(a). At the time of the incident which led to his discharge, plaintiff Johnnie Carr, a black World War II veteran and a civilian employee of the United States for 25 years, was employed as a stockman at the Naval Supply Center, Oakland, California. Plaintiff has invoked the jurisdiction of the court to review the Commission's decision, and to fashion effective relief, pursuant to 28 U.S.C. §§ 1343, 1346, 1361, 2201 and 5 U.S.C. § 702.[1]

On November 18, 1969, at approximately 3 p. m., John Rainford, driving a truck owned by the J & R Trucking Company, was apprehended at the gate of the Naval Supply Center by a security guard who discovered 13 cases of government subsistence items in the bed of his truck. Subsequently, during the course of the government's investigation of the theft, Rainford named the plaintiff herein as his accomplice. On or about January 2, 1970, plaintiff was notified of his proposed removal for complicity in this theft of government property. The plaintiff replied to the charge on January 9, 1970. On January 28, 1970, he was notified that the charge against him had been sustained and that his removal would be effective February 3, 1970. Plaintiff filed an appeal with the Commanding Officer of the Naval Supply Center on February 5, 1970, and a hearing was held on March 16, 1970. On July 20, 1970, the Commanding Officer issued a decision sustaining plaintiff's removal. On July 22, 1970, plaintiff filed an appeal with the San Francisco Regional Office of the Civil Service Commission. After a hearing on September 22, 1970, the Appeals Examiner issued a decision sustaining plaintiff's removal. On March 8, 1971, the Board of Appeals and Review affirmed that decision.

Plaintiff filed this action seeking an injunction, reinstatement, back pay and damages. In his complaint, plaintiff charged that the decision to remove him was arbitrary, capricious and an abuse of discretion, unsupported by any reliable, probative and substantial evidence. Moreover, plaintiff alleged the existence of a conspiracy among the defendants to deprive plaintiff, and other black employees of the Naval Supply Center, of their accrued retirement benefits.[2] The parties have filed cross-motions for summary judgment.

Traditionally, judicial review of personnel cases has been limited to determining whether there was substantial

1. The origin of this court's jurisdiction in such cases is murky:
   "We have pointed out before that these employee discharge cases, although in form original actions in the District Court, are in reality agency review proceedings and are normally treated as such by all parties. Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965). This creates difficulties, as here, in our ability to give, effectively and expeditiously, the most appropriate kind of relief. It also raises questions as to why Congress should not provide for statutory direct review of Civil Service Commission determinations in employee cases, comparable to that now employed in respect of other major federal administrative agencies." Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F. 2d 416, 417 n. 1 (1968).

However, as Judge Stahl pointed out in questioning the majority's assumption that the Administrative Procedure Act, 5 U.S.C. § 702, applied to such cases in Charlton v. United States, 412 F.2d 390, 396 (3rd Cir. 1969), "the power of the courts to review claims by government employees alleging improper dismissal is too well established to be rejected here."

2. The plaintiff has offered no evidence to support the conspiracy allegations in the complaint. Moreover, "plaintiff [is] bound to do more than merely state vague and conclusionary allegations respecting the existence of a conspiracy. It is incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Powell v. Work-

compliance with applicable procedural requirements. In Benson v. United States, 421 F.2d 515, 517–518 (9th Cir. 1970), the court said:

"In discussing the role of the courts in reviewing the discharge of federal employees, we noted in Seebach v. Cullen, 338 F.2d 663, 664 (9th Cir. 1964):

'Judicial review of dismissal from federal employment, a matter of executive agency discretion, is limited to a determination of whether the required procedural steps have been substantially complied with. Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774. . . .'

"Hargett v. Summerfield, 100 U.S. App.D.C. 85, 243 F.2d 29, 32 (1957) stated that preservation of agency autonomy in matters of discipline and removal has been the underlying policy which has resulted in the restricted role played by the courts in reviewing discharge procedures. Specifically the court in that case said:

'These cases and others [citations omitted] of similar import, decided both before and after the passage of the Administrative Procedure Act in 1946, make it clear that employee removal and discipline are almost entirely matters of executive agency discretion, and that judicial review of such actions is ordinarily available only to determine if there has been substantial compliance with the pertinent statutory procedures provided by Congress and no misconstruction of governing legislation. This has resulted in an unbroken line of authorities holding

men's Compensation Board of State of New York, 327 F.2d 131, 137 (2nd Cir. 1964). This plaintiff has not done. The allegations in the complaint are "vague and conclusionary," and there is not one shred of evidence tending to establish the existence of a conspiracy among the named

that, so long as there was substantial compliance with applicable procedures and statutes, the administrative determination was not reviewable as to the wisdom or good judgment of the department head in exercising his discretion.' (Citations omitted.)"

However, the cases also recognize that the courts' inquiry may encompass questions of arbitrariness, capriciousness, and malice. See Taylor v. United States Civil Service Commission, 374 F.2d 466 (9th Cir. 1967); Toohey v. Nitze, 429 F.2d 1332 (9th Cir. 1970). "Ordinarily the scope of judicial review of the action of the department in discharging an employee is limited to two main questions: (I) Were the procedural requirements of the statutes and regulations complied with; and (II) was the action of the department officials arbitrary or capricious or not supported by substantial evidence." Vigil v. Post Office Department, 406 F.2d 921, 924 (10th Cir. 1969), *quoted with approval in* Benson v. United States, *supra*, 421 F.2d at 517 n. 4. There appears to be relative unanimity of opinion among modern courts that this quotation—with the exception of the last six words—accurately states the scope of judicial review in employee discharge cases.

The courts diverge widely, however, in their opinions on the power of the courts to go further and determine whether the Commission's action is supported by substantial evidence. *Compare* Armstrong v. United States, 405 F.2d 1275, 1277, 186 Ct.Cl. 539, cert. denied 395 U.S. 934, 89 S.Ct. 1997, 23 L. Ed.2d 449 (1969) *with* Heffron v. United States, 405 F.2d 1307, 1310, 186 Ct. Cl. 474 (1969). The defendants take the

defendants, or anyone else, to deprive plaintiff, or any other black employee of the Naval Supply Center, of retirement benefits. Therefore, to the extent that plaintiff seeks to prosecute this cause as a class action, the court denies leave to do so.

position that the courts do not have such power; the plaintiff, needless to say, disagrees. The arguments and authorities in support of each position are ably marshalled in Charlton v. United States, 412 F.2d 390 (3d Cir. 1969). In *Charlton,* the majority took the view that the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, were controlling and required the federal courts to determine "whether the agency's action was in accordance with procedures required by law and supported by 'substantial evidence', or alternatively, capricious, arbitrary, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 392. After acknowledging the orthodox limitations on the scope of judicial review, the majority stated:

> "It must immediately be noted that cases more recently decided hold that courts after determining whether procedural requirements have been met *must* further determine, upon review of the administrative record, whether substantial evidence supports the federal agency's action in disciplining a federal employee." (citations omitted)

Judge Stahl, concurring in the result, balked at importing the substantial evidence test into employee discharge cases. Assuming *arguendo* that the Administrative Procedure Act applied, he argued that it did not even justify, much less compel, the majority's conclusion:

> "In my view the proper scope of review in cases of this type is limited to ascertaining whether applicable procedural requirements have been met and whether the agency action was arbitrary, capricious or an abuse of discretion. Beyond this, I would not go. Certainly the agency record should be carefully examined, for agency action totally devoid of factual support would warrant, if not compel, a determina-

tion that the action was arbitrary or capricious. But where under the governing statute removal may only be 'for such cause as will promote the efficiency of the service,' I believe it is neither advisable nor permissible for the courts to exercise the broad degree of scrutiny adopted by the majority." *Id.* at 400.

Since plaintiff in this case challenges the substantiality of the evidence supporting the Commission's decision, the court must resolve the question.

The Ninth Circuit has not confronted the issue directly, but it appears that it would align with the majority in Charlton v. United States, *supra,* in holding that the courts must determine whether the agency decision is supported by substantial evidence. Although there are earlier Ninth Circuit cases that suggest the courts do not apply a substantial evidence test, Seebach v. Cullen, 338 F.2d 663 (9th Cir. 1964); Brancadora v. Federal National Mortgage Ass'n, 344 F.2d 933 (9th Cir. 1965), the court departed from that view in Gray v. Macy, 358 F. 2d 742 (9th Cir. 1966), and Burke v. Carpenter, 387 F.2d 259 (9th Cir. 1967). Despite occasional reversions to the restricted scope of judicial review the court formulated in *Seebach* and *Brancadora,* see, e. g., Taylor v. United States Civil Service Comm'n, 374 F.2d 466, 469 (9th Cir. 1967); Mancilla v. United States, 382 F.2d 269, 270 (9th Cir. 1967), cert. denied 390 U.S. 982, 88 S.Ct. 1104, 19 L.Ed.2d 1280 (1968), the Ninth Circuit now appears to construe this line of cases to mean that the courts do apply a substantial evidence test. In Toohey v. Nitze, 429 F.2d 1332, 1334 (9th Cir. 1970), the court said:

> "The scope of judicial review is narrow. Assuming that statutory procedures meet constitutional requirements, the court is limited to a deter-

mination of whether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion. See Burke v. Carpenter, 387 F.2d 259 (9th Cir. 1967), cert. denied, 391 U.S. 903, 88 S.Ct. 1651, 20 L.Ed.2d 417 (1968); Mancilla v. United States, 382 F.2d 269, 270 (9th Cir. 1967), cert. denied, 390 U.S. 982, 88 S.Ct. 1104, 19 L.Ed. 2d 1280 (1968); Taylor v. United States Civil Service Commission, 374 F.2d 466 (9th Cir. 1967); Charlton v. United States, 412 F.2d 390 (3rd Cir. 1969)."

Recent cases in other circuits also apply the substantial evidence test, some directly, Meehan v. Macy, 129 U.S.App.D. C. 217, 392 F.2d 822 (1968); Halsey v. Nitze, 390 F.2d 142 (4th Cir.), cert. denied 392 U.S. 939, 88 S.Ct. 2316, 20 L. Ed.2d 1399 (1968); Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1966); Mendez v. Macy, 292 F.Supp. 802 (S.D.N.Y.1968); McEachern v. United States, 321 F.2d 31 (4th Cir. 1963), and some indirectly, Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754 (1963); Urbina v. United States, 180 Ct.Cl. 194, 208 (1967). Having concluded that these authorities represent the better view,[3] and the one implicitly adopted by the Ninth Circuit, the court now turns to the case before it.

The court has carefully reviewed the records of the administrative proceedings. Without Rainford's testimony naming plaintiff as his accomplice, the evidence against plaintiff is almost wholly circumstantial. Plaintiff knew Rainford, he had access to the items involved in the theft, and he volunteered to unload Rainford's truck out of sequence. However, no one actually saw him load the stolen items onto Rainford's truck. Basically, the conflict in the evidence is between Rainford's testimony implicating plaintiff and plaintiff's testimony denying his complicity. The plaintiff argues that Rainford's uncorroborated testimony is extremely unreliable, incredible and insubstantial in view of the several different versions of the incident he related to investigating officers. This court does not agree.

■ "It is well established that a conviction in federal court may be based on the uncorroborated testimony of an accomplice, if the testimony is not 'incredible or unsubstantial on its face'." Darden v. United States, 405 F.2d 1054, 1056 (9th Cir. 1969); see also Moody v. United States, 376 F.2d 525, 528 (9th Cir. 1967); Lyda v. United States, 321 F.2d 788, 794 (9th Cir. 1963). However, when the testimony of an accomplice is crucial in criminal cases, the jury should be admonished that such testimony should be received with caution and viewed with skepticism.

"Accomplice testimony should always be scrutinized carefully by the jury because of its inherent untrustworthiness. This is especially true when the witness has manifested his unreliability by making previous conflicting statements concerning his knowledge of the crime. When the accomplice

---

3. "Language in the opinions is common that review is limited . . ., but such language is usually in cases in which no claim was made that the findings were unsupported by substantial evidence. Refusals to pass upon such a claim are rare. . . . The law of review of employee dismissal cases has gradually moved from almost complete unreviewability early in the century to a rather complete review in accordance with the substantial evidence rule." K. Davis, Administrative Law Treatise (Supp.1970) § 29.07, at 1009, 1011.

testimony constitutes the only damning evidence against a defendant, the exigency for a cautionary instruction is even more compelling." Tillery v. United States, 411 F.2d 644, 646–647 (5th Cir. 1969).

Assuming *arguendo* that these principles apply to this case, the court would have to find that Rainford's testimony was so "incredible or insubstantial" on its face as to be totally unworthy of belief. The court could not justify this conclusion. In the court's view, however, employee discharge proceedings are not equivalent to criminal prosecutions. They do not require the application of either the federal rule or the more stringent California rule for which the plaintiff contends.[4]

■ The most the court can do is to insure that the administrative agency does not arbitrarily or capriciously place undue reliance on inherently unreliable evidence. The record in this case discloses that the hearing officers did weigh Rainford's testimony against plaintiff's with appropriate caution. The hearing officer designated by the Commanding Officer of the Naval Supply Center stated in his report of findings:

"Mr. Carr's denial of the charge, as well as other testimony which he gave, is, of course, self-serving and must be considered in that relative weight. Mr. Rainford's testimony cannot be considered to be self-serving, since he, under oath, gave testimony by which he incriminated himself. . . . In considering why Mr. Rainford would deny knowing the employee's name, who loaded the stolen property, when apprehended at the gate and later name Mr. Carr, I am convinced that Rainford was attempting at first to protect Mr. Carr (whom he testified he liked) but under repeated questioning and with promise of continued questioning 'broke' and decided to tell a truthful account of the events leading to his apprehension."

The Regional Appeals Examiner for the Civil Service Commission noted:

"We find no reason to disbelieve Mr. Rainford when he named the appellant as the person who suggested this plan for the theft of government subsistence items. . . . The circumstantial evidence in this case offers strong support to the testimony of Mr. Rainford that he agreed to the appellant's plan to unlawfully take the government subsistence items from the base."

The two hearing officers had the opportunity to observe the witnesses' demeanor and to hear them testify. It would hardly comport with the judicial function in these cases were the court to ignore these facts and rely instead on its own speculative appraisals of the witnesses' credibility.[5]

4. California Penal Code § 1111 provides: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." In People v. Robinson, 61 Cal.2d 373, 399, 38 Cal. Rptr. 890, 906, 392 P.2d 970, 986 (1964), the California Supreme Court observed: "It is necessary that the evidence corroborating an accomplice shall connect or tend to connect the defendant with the commission of the crime. Corroborative evidence is insufficient where it merely casts a grave suspicion upon the accused. It must not only show the commission of the offense and the circumstances thereof, but must also implicate the accused in it. . . ."

5. "For the demeanor of a witness '. . . may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to

It bears repeating that this court is not authorized to weigh the evidence and substitute its judgment for the judgment of the administrative agency in cases such as this. Its sole task in reviewing the administrative findings is to insure that they are supported by substantial evidence. This does not mean that the court will uphold the agency's finding on the basis of any evidence.

> "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

The Supreme Court restated its adherence to this view in Consolo v. FMC, 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), where the Court noted further: "This is something less than the weight of the evidence, and *the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.*" (emphasis added). Thus, the same principle of judicial review extends to all inferences which might reasonably be drawn from the evidence: "The weight to be given to the facts and circumstances admitted as well as the inferences reasonably to be drawn from them is for the Commission." FTC v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 63, 47 S.Ct. 255, 258, 71 L.Ed. 534 (1927). Under this standard, it is of no moment that the court, if it were called upon to try the matter *de novo*, might have justifiably made different findings, or drawn different inferences, or reached a different conclusion. Compare Universal Camera Corp. v. NLRB,

340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The pleadings and the record of the administrative proceedings on file show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. The court finds that the administrative proceedings complied with applicable statutory and regulatory requirements, the factual determinations were supported by substantial evidence, and the plaintiff's discharge was not arbitrary, capricious or an abuse of discretion.

It is therefore ordered that the defendant's motion for summary judgment is granted.

---

give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.' "

NLRB v. Walton Mfg. Co., 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962).