Robert K. RUBIO, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Robert E. HAMPTON et al., Defendants.

No. 73–144–AAH.

United States District Court, C. D. California.

Oct. 29, 1974.

Bruce M. Stark, Los Angeles, Cal., for plaintiff, Robert K. Rubio.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief Civ. Div., by Carolyn M. Reynolds, Asst. U. S. Atty., for defendants, Robert E. Hampton, Jayne Spain, and L. J. Andolsek, members of the United States Civil Service Commission; Arthur F. Simpson, Administrator of General Services Administration, an agency of the Federal Government; and Thomas E. Hannon, Regional Administrator of General Services Administration.

## DECISION

HAUK, District Judge.

Plaintiff challenges the final decision of the Board of Appeals and Review of the United States Civil Service Commission which upheld his removal as a Supervisor, General Commodities Control Representative, with the United States General Services Administration (GSA). In his First Amended Complaint, Plaintiff contends that his dismissal was violative of his First and Fifth Amendment rights and he seeks injunction mandamus, declaratory relief, reinstatement, back pay and damages. The Court's jurisdiction of this case therefore is founded upon the "Federal question", 28 U.S.C. § 1331, which Plaintiff raises, upon 28 U.S.C. § 1361 since he seeks mandamus, and upon 5 U.S.C. §§ 702 and 703 which provide a District Court remedy for review of Civil Service Commission decisions. Plaintiff's discharge was predicated by GSA upon four charges [1] which

---

1. The charges against Plaintiff were made in writing on October 22, 1968, as follows:

Charge No. 1—Failure to Voluntarily Report an Automobile Accident Involving a Government-Owned Automobile you Operated—You did not report an accident with a privately owned automobile while driving a Government-owned motor vehicle. The accident occurred on May 14, 1968, in Pacoima, California, and resulted in a tort claim against the U.S. Government. It was not until May 24, 1968, when Mr. Frank Aldrich received the tort claim, that GSA was aware of the accident. On instruction from the Quality Control Division Chief, Mr. Aldrich insisted you complete the Operator's Report of Motor Vehicle Accident (SF–91) on May 24, 1968. This is a violation of GSA Order 9ADM 5620.50, Interagency Motor Pool Service, with which you are familiar, that sets forth reporting an accident with a Government-owned motor vehicle within 24 hours as a requirement of the operator.

Charge No. 2—General Misconduct Off Duty—Following the accident described above you initially refused to identify yourself to the driver or the owner of the other automobile involved. Only when threatened with police

allegedly justified removal "for such cause as will promote the efficiency of the service," under 5 U.S.C. § 7501.

■ Notice and specification of these charges was sent to Plaintiff on October 22, 1968, he received them on October 24, 1968, and he denied them in their entirety in his response letter sent October 29, 1968. An informal hearing was held before E. W. Baughman, Acting Regional Personnel Officer for GSA, on November 8, 1968, in which Plaintiff and his representative, Leo Molina, the National Representative of the American Federation of Government Employees (AFGE), responded orally to the charges. On November 29, 1968, Baughman issued his decision finding that all four charges were "fully supported by the evidence and warrant your removal." The decision also informed Plaintiff that his re-

moval would become effective on December 30, 1968.[2] On January 3, 1969, Plaintiff appealed this decision and requested a formal hearing before a GSA three-member Committee which was mutually selected by both Plaintiff and GSA.

The hearing lasted for five days beginning on May 13, 1969.[3] The Committee found that the removal was justified, and the GSA formally notified Plaintiff of its decision on May 18, 1970. On June 29, 1970, Plaintiff exercised his right to and did appeal to the San Francisco Regional office of the Civil Service Commission and a formal hearing was then held by the Appeals Examiner on October 22, 1970, in Los Angeles, California. On December 3, 1970, the Appeals Examiner upheld both the procedure followed by GSA and the substance

---

intervention did you produce your driver's license. During the discussion your proclaimed "No one can mess with me," and "this is a Government car—you can't mess with the Federal Government." You were involved in another automobile accident which occurred on July 3, 1968. Again you were driving a Government-owned motor vehicle and collided with a privately-owned vehicle. You fled the scene of the accident and were pursued at speeds up to 80 miles per hour and could not be overtaken. Your actions in both instances were a reflection on and prejudicial to the Government and, therefore, in violation of the GSA Standards of Conduct for employees.
Charge No. 3—Willful Use of a Government-Owned Motor Vehicle for Unofficial Purposes—The May 14, 1968, automobile accident occurred after you drove off the Ventura Freeway, the most direct route to your residence in Pico Rivera from the 3-M Company facility in Camarillo, California, and allegedly went to the San Fernando Post Office on McClay Street and the bowling alley on Glen Oaks Boulevard. Prior to the July 3 accident and after completion of your day's work at the 3-M Company, you drove to the Hitching Post Restaurant/Cocktail Lounge in Camarillo, for dinner and cocktails.
Charge No. 4—General Misconduct on Duty—On June 18, 1968, you visited the office of Tech Plastics, Inc., one of GSA's contractors. You stated that Tech Plastics' proposed sub-contractor, Specialty Converting Inc., was financially unsound and made a bad product, an improper statement for you to

make, in that you occupy a position of confidence—the integrity of which must not be compromised. When you were refused a view of the Tech Plastics Plant facilities, you became angry and made remarks like "I am going to put you in default." Your conduct was not considered a credit to the Government by the Tech Plastics personnel who were witnesses to your behavior and who revealed their feelings to representatives of this agency.

2. AFGE filed on behalf of Plaintiff a list of procedural errors committed by GSA among which it included the charge that Plaintiff did not receive a "30 full days' advance written notice" of the charges. However, 5 CFR § 752.202(a)(1) requires only 30 days' notice before any adverse action is taken against the employee. GSA conformed to this requirement, first by sending notice and specifications of the charges on October 22, 1968, and secondly, by Baughman's removal notice of November 29, 1968, more than 30 days later, advising Plaintiff that his removal would be effective December 30, 1968, more than 60 days later. Moreover, by responding as he did on October 29, 1968, Plaintiff not only waived any claim based upon the "30 days advance written notice" requirement of 5 CFR 752.202(a)(1), but is effectively estopped by his request that his response and hearing be held "at a time and place designated by you [Baughman]."

3. A complete transcript of the hearing, consisting of two volumes and including exhibits, was submitted to and has been thoroughly reviewed by the Court.

of all of the charges by GSA thereby affirming Plaintiff's removal. On December 10, 1970, the AFGE filed an appeal on behalf of Plaintiff before the Board of Appeals and Review of the Civil Service Commission in Washington, D.C. On June 10, 1971, the Board affirmed the decision of the Appeals Examiner in all respects.

■■ The scope of judicial review of actions of administrative agencies is narrow. Traditionally, judicial review has been limited to "a determination of whether the required procedural steps have been substantially complied with." Seebach v. Cullen, 338 F.2d 663, 664 (9th Cir. 1964). See also Benson v. United States, 421 F.2d 515, 517 (9th Cir. 1970) citing Seebach with approval. The test to be applied in such cases is whether the agency's action was arbitrary, capricious or an abuse of discretion. Brancadora v. Federal National Mortgage Ass'n., 344 F.2d 933 (9th Cir. 1965); Robinson v. Blount, 472 F.2d 839 (9th Cir. 1973); Seebach v. Cullen, supra.

More recently, however, the trend has been to enlarge the judicial review test to require a judicial finding that the agency's factual determinations were and are "supported by substantial evidence." The test to be used was thus formulated by the Tenth Circuit in Vigil v. Post Office Department, 406 F.2d 921, 924 (10th Cir. 1969):

"(I) Were the procedural requirements of the statutes and regulations complied with; and (II) was the action of the department officials arbitrary or capricious or not supported by substantial evidence."

See also Toohey v. Nitze, 429 F.2d 1332 (9th Cir. 1970); Gray v. Macy, 358 F.2d 742 (9th Cir. 1966); Carr v. United States, 337 F.Supp. 1172 (N.D. Cal.1972).

■ We believe the latter cases articulating the "substantial evidence" test, as well as applying the "arbitrary or capricious" and "procedural requirements" tests, the better as well as the newer view.[4]

Turning now to the case before the Court, Plaintiff's main contentions are that the hearings initially conducted by GSA, in accordance with applicable regulations, lack due process safeguards violative of the Fifth and Sixth Amendments,[5] and that Plaintiff's allegedly wrongful speech and actions were and are protected by the First Amendment's Free Speech Clause.

■ Plaintiff bases his due process argument on two grounds: (1) that GSA failed to provide him with the Investigative Report prior to and during the two hearings; and (2) that the agency's failure to call all of the adverse witnesses deprived him of the right of confrontation and cross-examination of those not called. However, 5 U.S.C. § 7501(b) states in pertinent part that: "Examination of witnesses, trial, or hearing is not required but may be provided in the discretion of the individual directing the removal . . . ." In Arnett v. Kennedy, 416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court upheld the constitutionality of the statute,[6] saying 416 U.S. at 163, 94 S.Ct. at 1649:

"In sum, we hold that [5 U.S.C. § 7501], in at once conferring upon non-

4. We are not unmindful of the fact that the application of the "substantial evidence" test has its limitations, as was pointed out in Studemeyer v. Macy, 116 U.S.App.D.C. 120, 321 F.2d 386, 387 (1963):
"There may be ground for reasonable differences of opinion as to whether the cause for which the personnel action was taken was enough to warrant depriving appellant of his position, but the court is not warranted in substituting a different judgment

of its own for that of appellant's supervisors."

5. We note that Plaintiff does not raise the Sixth Amendment claim in his Complaint, but only in his "Statement of Genuine Issues and Points and Authorities in Opposition to Motion to Dismiss and Motion for Summary Judgment," pp. 3–5.

6. Arnett v. Kennedy was decided subsequent to the filing of the First Amended Com-

probationary federal employees the right not to be discharged except for 'cause' and prescribing the procedural means by which that right was to be protected, did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause beyond that afforded here by the statute and related agency regulations."

Plaintiff cites a recent District Court opinion, Henley v. United States, 379 F. Supp. 1044 (M.D.Pa.1974), to support his contention that a Federal employee has the right to confront adverse witnesses. His reliance on the holding in that case is misplaced since the Court there merely held that the evidence was "devoid of substantiality" and *not,* as Plaintiffs contends, that the agency was barred from receiving and considering hearsay testimony. As the Court stated:

"We are not prepared to rule that the absence of subpoena power is *per se* a due process violation, because to so rule would permit an employee to block his removal without regard to the quality of the case against him.

It is entirely possible that an agency without subpoena powers could secure the voluntary appearance of witnesses whose testimony would be sufficient to establish a substantial case. Moreover, we note that the plaintiff has not claimed that the lack of subpoena power prevented him from obtaining witnesses favorable to his position. The record establishes the contrary." 379 F.Supp. at 1048.

■■■ The record in the instant case likewise is completely devoid of any showing that Plaintiff was prejudiced by not presenting any and all *favorable* witnesses he desired to produce to refute the charges.[7] Although it is true that the Investigative Report was not provided to Plaintiff at the time of the two GSA hearings, it was not introduced into evidence.[8] Rather, the GSA Investigator himself appeared as a witness and testified fully as to what the witnesses, including Plaintiff, had told him. Plaintiff's attack on this hearsay testimony was considered by the Board of Appeals and Review:

"The appellant's comment that the evidence against him rests greatly upon statements obtained by, and testimony of, GSA Investigator Anderson is factual. However, the record does not contain a scintilla of evidence to discredit Investigator Anderson's fairness and impartiality in reporting the evidence surrounding the matters charged against the appellant."

As the Court correctly stated in Carr v. United States, *supra* 337 F.Supp. at 1177: "The most the court can do is to insure that the administrative agency does not arbitrarily or capriciously place undue reliance on inherently unreliable evidence." We find that the GSA's reliance on the evidence was not arbitrary or capricious, that the agency substantially complied with all required proce-

---

plaint, but it nevertheless effectively applies to the case here at bar, and as a consequence Plaintiff's prayer that 5 U.S.C. § 7501 be declared unconstitutional on behalf of himself and all others similarly situated should be summarily dismissed as we later order herein and in the Judgment.

7. Plaintiff called four witnesses who appeared on his behalf. *See* the AFGE's request for witnesses on behalf of Plaintiff in a letter dated April 9, 1969, GSA's response of April 14, 1969, and the GSA Three-Member Committee Hearings, p. ii.

Plaintiff objected only to the use of hearsay testimony and did not claim that

any prejudice resulted from the absence of any *favorable* witnesses. Of course, one could not expect him to complain of the absence of any *unfavorable* witnesses. *See* AFGE's letter of June 1, 1970 to the U.S. Civil Service Commission's Regional Office sent on behalf of Plaintiff. Furthermore, all of the hearsay testimony admitted into evidence was corroborated. *See* Richardson v. Perales, 402 U.S. 389, 398, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

8. Plaintiff later was given the Investigative Report at the time of his appeal before the Appeals Examiner of the Civil Service Commission.

dural steps, and that its decision is fully supported by substantial evidence. Plaintiff's argument that he was denied due process protection is necessarily rejected.

■ Plaintiff also makes much of the fact that the allegations contained in the fourth charge involve protected speech and that his dismissal on this charge violates the First Amendment. The holding in Arnett v. Kennedy, *supra,* 416 U.S. 134, at 162, 94 S.Ct. 1633 at 1648, 40 L.Ed.2d 15 is controlling here:

> "The Act [5 U.S.C. § 7501] proscribes only that public speech which improperly damages and impairs the reputation and efficiency of the employing agency, and it thus imposes no greater controls on the behavior of federal employees than are necessary for the protection of the Government as an employer. Indeed the Act is not directed at speech as such, but at employee behavior, including speech, which is detrimental to the efficiency of the employing agency."

The record shows that Plaintiff communicated confidential information and even his own affidavit of August 8, 1968, states: "I knew immediately after I made the statements regarding Specialty Converting that they were out of line, and that I should not have made them or given him [President of Tech Plastics, Inc.] any information about another GSA vendor or plant." Moreover, Plaintiff's threatening language to the President of Tech Plastics, Inc., was witnessed by Howard Stonebreaker, GSA's Quality Control Representative, who testified personally at the GSA hearing and his testimony more than adequately supports the allegations of the fourth charge.

Plaintiff's reliance on Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) to support his contention that we cannot grant summary judgment in cases involving the right of free speech is without merit here. *Perry* is directed to the situation where an employee's speech by itself forms the *only* basis of allegedly wrongful conduct resulting in claimed "retaliatory" dismissal. However, assuming *arguendo,* that Plaintiff's speech is protected, the allegations contained in the other three charges were not impeached or refuted by Plaintiff, and therefore do support a finding that Plaintiff's removal was "for such cause as will promote the efficiency of the service." There can be no doubt that Plaintiff's speech, which consisted of threatening and abusive language was unprotected, Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and improperly damaged and impaired the reputation and efficiency of GSA, the employing agency. Arnett v. Kennedy, *supra,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15.

In sum, the Court finds that the pleadings and the record of the administrative proceedings on file impressively demonstrate that there is no genuine issue as to any material fact[9] and that the Defendants are entitled to judgment as a matter of law. Additionally, we find that the administrative proceedings complied with applicable statutory and regulatory requirements, the factual determinations were supported by substantial evidence, and the Plaintiff's discharge was not arbitrary, capricious or an abuse of discretion. Finally, we further find that the words and speech used by Plaintiff in his discussions with Tech Plastics, Inc., disparaging its subcontractor, Specialty Converting, Inc., and Plaintiff's threatening conduct and remarks to the President of Tech Plastics, Inc., as well as at the scene of the accident on May 14, 1968, as alleged in the second charge, were not and are not protected by the Free Speech Clause of the First Amendment.

9. In actuality, Plaintiff's so-called "Statement of Genuine Issues," pp. 1–3 of 1 is "Opposition to Motion for Summary Judgment" is no such statement at all, but only a hodge-podge of legal argument larded with copious legal conclusions and without any attempt to state any true issues of material facts.

**224**

By reason of the foregoing decision which shall constitute the Findings of Fact and Conclusions of Law required by Rule 52, Federal Rules of Civil Procedure, it is hereby ordered that the Defendant's motion for summary judgment be granted.

Let judgment be entered accordingly.