Laymon Wesley **ALSBURY,**
**Plaintiff,**

v.

The **UNITED STATES POSTAL SERVICE et al., Defendants.**
**Civ. No. 74–1610–AAH.**

United States District Court,
C. D. California.

April 1, 1975.

John M. Sink, Santa Barbara, Cal., for plaintiff, Laymon Wesley Alsbury.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, John L. Guth, Asst. U. S. Atty., for defendants.

## MEMORANDUM OPINION AND ORDER FOR SUMMARY JUDGMENT

HAUK, District Judge.

Plaintiff challenges the final decision of Assistant Postmaster General, Employee Relations Department, U. S. Postal Service, William Eudey, dated May 10, 1974, upholding both Plaintiff's suspension and removal from the Postal Service. In his Complaint, Plaintiff contends that his dismissal was violative of his Fifth Amendment rights of due process and double jeopardy and he seeks injunctive mandamus, declaratory relief, reinstatement, back pay and damages. The Postal Service bases its suspension and removal of Plaintiff on three charges [1] which allegedly justified re-

---

[1]. The three charges, as more fully set out in OIC Niles' notice of removal of October 12, 1973, to Plaintiff, are as follows:

"1. Misappropriation of Air Conditioner. During the month of June 1973 you unlawfully removed from the custody of the U. S. Postal Service at Mojave, CA, a Fedders Air Conditioning Unit, Serial #HE639028.

2. Misappropriation of Cassette Recorder. During the period of time that you were Officer in Charge at the Mojave,

moval "for such cause as will promote the efficiency of the service" under 5 U.S.C. § 7501.

Plaintiff is a 31 year-old Postal employee who began working for the Postal Service 12 years ago. In approximately May or June of 1972, Plaintiff was appointed Assistant Postmaster in Mojave, California, and because of the illness of the Postmaster, Plaintiff was subsequently appointed Officer-in-Charge (OIC) of the Mojave Post Office and Sectional Center. He was relieved as OIC on July 2, 1973 when a regular Postmaster was appointed. Plaintiff's request for transfer to the Santa Barbara Post Office was granted, effective July 21, 1973, and he reported for duty on August 14, 1973.

During the month of August, 1973, Postal Inspectors Alfred C. Howe and Charles H. Huggins conducted an inspection of the Mojave post office when they discovered that some property was missing, including an air conditioner, a tape recorder (cassette), and a small wooden bookcase. A custodial employee, Sam Mitchell, told the Postal Inspectors that he had assisted Plaintiff in loading the air conditioner aboard Plaintiff's truck in the latter part of June, 1973. Upon questioning of Plaintiff on August 23, 1973, in Santa Barbara, Plaintiff admitted having removed the air conditioner from the Mojave post office, saying it was "junk" which he intended to sell as surplus for the post office. Plaintiff gave the Postal Inspectors permission to remove the air conditioner from his garage and signed a form authorizing the new Postmaster in Mojave to take the machine. However, when the Postal Inspectors went to Plaintiff's former home in Mojave, all of his personal belongings had already been shipped to storage in Santa Barbara. Although Plaintiff had told the Postal Inspectors that he did not recall taking a bookcase and cassette recorder, these two items, together with the air conditioner, had been found by the Postal Inspectors in storage at Santa Barbara.

Plaintiff was subsequently charged in Federal court with violating 18 U.S.C. § 1707, Theft of Postal Property. As a result of a jury trial on December 19–20, 1973, Plaintiff was acquitted.

On September 20, 1973, Plaintiff received a notice of indefinite suspension dated the same date from Santa Barbara Post Office OIC, John M. Niles, in accordance with § 444.32(e) of the Postal Service Manual, and on September 22, 1973, Plaintiff received Niles' decision of the same date to suspend Plaintiff indefinitely. Plaintiff appealed this *suspension* decision on October 5, 1973, to G. B. Hartsook, District Manager of the San Bernardino District Office of the Postal Service. On October 12, 1973, Plaintiff was then sent a notice of *removal* from OIC Niles, and Plaintiff's counsel responded by letter on October 23, 1973. Plaintiff was then sent Niles' decision of October 30, 1973, to remove him effective November 16, 1973, and Plaintiff appealed this *removal* decision to Hartsook on November 7, 1973.

On December 27, 1973, Plaintiff received a notice of hearing in which both his *suspension and removal* appeals were consolidated for hearing before Don Freebairn, Hearing Officer. A hearing was duly held on January 3–4, 1974 in Santa Barbara, California.[2] On Janu-

---

CA Post Office, which was from October 5, 1972 through July 2, 1973, you unlawfully removed from the custody of the U. S. Postal Service at Mojave, CA, a Realistic Cassette Recorder.

3. Misappropriation of Bookcase.
 During the period of time that you were Officer in Charge at the Mojave, CA Post Office, which was from October 5, 1972 through July 2, 1973,

you unlawfully removed from the custody of the U. S. Postal Service at Mojave, CA, a wooden bookcase."

2. The Postal Service called six witnesses, and Plaintiff called two of his own. The transcript of the administrative hearing was tape recorded and later transcribed. This transcript, the entire administrative record and the pleadings herein have been thoroughly reviewed by the Court.

ary 30, 1974, Hearing Officer Freebairn's Findings of Fact and Recommendations affirming Plaintiff's *suspension* and subsequent *removal* were submitted to the Step I Officer, William J. Sullivan, Regional Postmaster General of the Western Region, pursuant to § 444.341(a)(3)(e) of the Postal Manual. On March 25, 1974, Sullivan affirmed Freebairn's findings and upheld both the *suspension and removal* of Plaintiff. Plaintiff filed a notice of appeal on April 8, 1974, and on May 10, 1974, Assistant Postmaster General William Eudey affirmed Sullivan's decision. Plaintiff filed his Complaint in this District Court on June 10, 1974, and jurisdiction is predicated on 5 U.S.C. §§ 702 and 703; 39 U.S.C. §§ 401 (1) and 409(a); and 28 U.S.C. §§ 1331 (Federal question), 1339 (Postal matters), and 1343(4) (civil rights). The Court is now presented with cross motions for summary judgment by both Plaintiff and Defendants.

Plaintiff bases his motion for summary judgment on two grounds: (1) that the acquittal of Plaintiff in December, 1973, is binding on the Postal Service; and (2) that Plaintiff's *suspension* without a prior hearing was arbitrary and capricious and a denial of due process. Defendants oppose these contentions and move for summary judgment on the grounds, *inter alia,* that there is substantial evidence in the administrative record to support the Plaintiff's *suspension* and *removal* and, further, that Defendants have substantially complied with all the required procedural steps.

■■ The scope of judicial review of actions of administrative agencies is narrow. Traditionally, judicial review has been limited to "a determination of

whether the required procedural steps have been substantially complied with." Seebach v. Cullen, 338 F.2d 663, 664 (9th Cir. 1964). *See also* Benson v. United States, 421 F.2d 515, 517 (9th Cir. 1970), citing *Seebach* with approval. The test to be applied in such cases is whether the agency's action was arbitrary, capricious or an abuse of discretion. Brancadora v. Federal National Mortgage Ass'n., 344 F.2d 933 (9th Cir. 1965); Robinson v. Blount, 472 F.2d 839 (9th Cir. 1973); Seebach v. Cullen, *supra.*

More recently, however, the trend has been to enlarge the judicial review test to require a judicial finding that the agency's factual determinations were and are "supported by substantial evidence." The test to be used was thus formulated by the Tenth Circuit in Vigil v. Post Office Department, 406 F.2d 921, 924 (10th Cir. 1969):

> "(I) Were the procedural requirements of the statutes and regulations complied with; and (II) was the action of the department officials arbitrary or capricious or not supported by substantial evidence."

*See also* Toohey v. Nitze, 429 F.2d 1332 (9th Cir. 1970); Gray v. Macy, 358 F.2d 742 (9th Cir. 1966); Carr v. United States, 337 F.Supp. 1172 (N.D.Cal.1972).

As we said in Rubio v. Hampton, 384 F.Supp. 218, 221 (C.D.Cal.1974):

> "We believe the . . . cases articulating the 'substantial evidence' test, as well as applying the 'arbitrary or capricious' and 'procedural requirements' tests, the better as well as the newer view."

■ With this standard of judicial review in mind, the Court now considers Plaintiff's first contention that the ac-

---

Plaintiff draws our attention to the hearing transcript to argue that the numerous gaps in the testimony somehow works a denial to Plaintiff of Fifth Amendment Due Process protection. (*See* the second affidavit of Plaintiff's counsel filed in opposition to Defendants' motion for summary judgment.) Although the Court notes that the transcript is a poor one, we are not convinced, nor has Plaintiff shown, that the

gaps omit any substantial evidence crucial to Plaintiff's case. In fact, Plaintiff's counsel, in paragraph 8 of his same affidavit mentioned hereinabove, admits that despite the alleged defects, the transcript fully supports Plaintiff's recitation of the testimony given at the hearing.

We therefore find no merit in Plaintiff's due process claim challenging the transcript.

quittal in the criminal case is binding on the Postal Service. We search in vain for any authority to support this contention. In fact, the weight of authority is solidly to the contrary as long as there is substantial evidence to support the grounds for removal. *See* Finfer v. Caplin, 344 F.2d 38 (2d Cir. 1965); Croghan v. U. S., 89 F.Supp. 1002, 116 Ct.Cl. 577 (1950); and Kowal v. U. S., 412 F.2d 867, 188 Ct.Cl. 631 (1969). The reasoning underlying these cases apparently rests on the different standards of proof to be applied in *criminal* cases and in government employee *civil removal* cases.

 Since the grounds for removal must be, according to 5 U.S.C. § 7501, "for such cause as will promote the efficiency of the service," the burden of proof on the employing agency necessarily is less than the standard of "beyond a reasonable doubt" that is applied in criminal cases. Also, the employing agency, as well as the government employee, is entitled to an independent hearing and review of the evidence to determine whether continued employment is in the best interests of the government agency and the employee. Certainly, the agency, in making its own determination, cannot be constrained to blindly follow the results of a criminal trial which has a stricter standard of proof and far different consequences for the employee. This is not to say that an

agency should totally ignore the results of a criminal trial of its employee, but rather that it should consider all of the evidence concerning the charges made. It is clear from the analysis and study of the complete record in this case that Plaintiff fully apprised the Postal Service of his acquittal,[3] but that the Service nevertheless had much more than substantial evidence to support the charges.

 Plaintiff's second contention that his indefinite *suspension*, without a prior hearing was arbitrary and capricious and a denial of due process, is also without merit. Section 444.221(e)[4] of the Postal Service Manual provides an exception to the general rule of at least 30 days' notice before suspension occurs. Plaintiff had been indicted by a Federal Grand Jury in Fresno on September 13, 1973, and the first investigative summary from Postal Inspectors Howe and Huggins had been submitted to OIC Niles on September 14, 1973. Therefore, it is apparent that the Postal Service had "reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment may be imposed" within the meaning of § 444.221(e) of the Postal Service Manual in making its decision to suspend Plaintiff indefinitely.

 Plaintiff also makes much of the fact that Postmaster Sullivan's delay in issuing a decision constitutes a violation of due process.[5] The law is

3. *See, e. g.,* Plaintiff's opening argument made at the administrative hearing before the Hearing Officer, Transcript of Hearing, January 3–4, 1974, p. 10, and the letters of Plaintiff's counsel to the Postal Service dated March 25, 1974, and April 8, 1974.

4. This section reads as follows:
"*Exception*—When there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment may be imposed, the advance notice requirement shall be reduced to 24 hours. The employee shall have the opportunity to answer the letter of proposed action within that 24-hour period. At the expiration of the 24-hour period a letter of decision shall be issued forthwith. Thereafter the employee shall remain on the rolls in a non-pay status until a final administrative decision is made re-

garding his employment status with the Postal Service."

5. *See* Plaintiff's counsel's letters of February 22, 1974, and March 25, 1974. The latter charged that Regional Postmaster Sullivan's delay was a result of Hearing Officer's Freebairn's recommendations favorable to Plaintiff, and that the Postal Service had "dragged this out past all reason" beyond the limits of due process safeguards. *But see* Sullivan's response of April 4, 1974 and his affidavit filed in support of Defendants' motion for summary judgment in which he states at paragraph 5 that "No other information, oral or documentary, not contained in those documents identified above, was considered as a basis for the decision issued on March 25, 1974." We give full faith and credit to this affidavit when opposed

clear, however, that when Plaintiff alleges any procedural defects he must also show that the delay was unreasonable and prejudicial to his case. As the Court stated in Pauley v. U. S., 419 F.2d 1061, 1067 (7th Cir., 1969):

"We have carefully examined the administrative record and are convinced that no unreasonable delay occurred and the delay that existed was not prejudicial to plaintiff. This assertion of prejudicial delay is without merit."

We are likewise convinced that Sullivan's failure to comply with § 444.241 (a)(3)(e) to the letter was not unreasonable nor is there any showing of resultant prejudice to the Plaintiff. Cohen v. U. S., 369 F.2d 976, 988, 177 Ct.Cl. 599 (1966); Pauley v. U. S., *supra.*

 The Court has considered all of the remaining points argued by Plaintiff and finds them without merit. Having exhaustively considered and reviewed the pleadings, the administrative record and transcript of the hearing, the Court now finds that the record impressively demonstrates that there is no genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law. We further find that the factual determinations made by the Postal Service are supported by substantial evidence; that Plaintiff's suspension and removal were not arbitrary, capricious or an abuse of discretion; and that Plaintiff's suspension and removal were "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7501.

The Court therefore denies Plaintiff's motion for summary judgment and grants summary judgment for Defendants.

The foregoing Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as provided in Rule 52, Fed.R.Civ.P.

Let judgment be entered accordingly.

only by the speculative allegations of Plaintiff. Nor is there any evidence that the delay was deliberate or prejudicial to Plain-

## JUDGMENT

The Motion of the defendants for summary judgment in the above-entitled action having come on for hearing before the Honorable A. ANDREW HAUK on the 13th day of January, 1975, and the issues having been duly heard, and a decision having been duly rendered in accordance with the Findings of Fact and Conclusions of Law entered herein,

It is ordered, adjudged, and decreed that judgment be, and the same is, hereby entered in favor of the defendants and against the plaintiff; that the plaintiff take nothing; and that the action be dismissed on the merits with the defendants recovering their costs of this action.

tiff, as we point out more fully *infra* in our Memorandum Opinion.